**Moyer Reed PLASTER, Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

**Civ. A. No. 81–0164.**

United States District Court,
W.D. Virginia,
Roanoke Division.

April 11, 1985.

Carr L. Kinder, Jr., Bird, Kinder & Huffman, Roanoke, Va., for petitioner.

Jean B. Weld, Asst. U.S. Atty., Roanoke, Va., for respondent.

## MEMORANDUM OPINION

TURK, Chief Judge.

This habeas corpus proceeding is before the Court pursuant to the remand of the United States Court of Appeals for the Fourth Circuit. It involves the attempt to extradite petitioner to West Germany to stand trial for a murder committed in 1965. In the initial proceedings following the murder, petitioner was granted immunity from military prosecution and was promised that he would not be extradited to West Germany for prosecution there. Pursuant to a subsequent treaty entered into force in 1980, however, the United States Attorney for the Western District of Virginia sought extradition. This court held that extradition was barred in Plaster's case and the government appealed. The Fourth Circuit remanded the case for a determination of whether the military officers, Colonel Hart and General Shellman, had authority to promise Moyer Plaster that he would not be returned to German authorities for trial, stating that:

> Were it to be true that the State Department through its liason told Hart that a final decision had been made that Plaster would not be extradited and that Hart

should continue using his best judgment to get some sort of a conviction out of the case, we would have no trouble agreeing with the district court that Hart had been delegated the authority to promise Plaster as part of the agreement in exchange for his testimony against Burt, that the United States government would not extradite him to Germany for the 1965 murder.

*Plaster v. United States,* 720 F.2d 340, 355 (4th Cir.1983).

■ The court has reviewed the evidence and arguments presented by the parties on remand and concludes that Colonel Hart did have the authority to grant Plaster immunity from extradition. The question of fact which was of concern to the Fourth Circuit was Hart's assertion that Colonel York, pursuant to a telephone conversation, had informed him that Plaster would not be extradited and York's subsequent denial that he made such a call. The affidavit of Colonel Hart, presented by the government, resolves this question. In his affidavit, Hart admitted that he had mistakenly named York as the person with whom he had discussed the Plaster matter. In reality, Hart stated, he spoke with Colonel Al Rakas, Chief of International Affairs Division, USAREUR, who told him that the State and Defense Departments had decided that to then allow West Germany to recall its jurisdiction after it had failed to do so during the twenty-one day time limit set forth in the Supplementary Agreement to the SOFA treaty would set a bad precedent. Hart was also told that it was the United States Government's policy to assert and maintain jurisdiction whenever possible in situations where both the United States and the receiving country had concurrent jurisdiction. Hart went on to state that his actions with regard to offering a grant of immunity and to promising Plaster that he would not be extradited were his response to the decision of the State and Defense Departments.

In light of the affidavit of Colonel Hart, the court finds that the State Department, through its liason, Colonel Rakas, told Hart that a final decision had been made that Plaster would not be extradited. Accord-ingly, the court finds that Hart had the requisite authority to promise Plaster freedom from extradition.

The government has advanced another argument which, if correct, would necessitate a denial of relief to Plaster. According to the United States Attorney, the case of *Mabry v. Johnson,* —— U.S. ——, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), decided subsequent to the Fourth Circuit's decision in this case, controls and mandates a finding that, even assuming Hart had authority to promise immunity from extradition, Plaster's constitutional rights were not violated. This court does not agree. *Mabry* involved two separate plea negotiations, and the defendant's guilty plea based on a full knowledge of the surrounding facts. In *Mabry,* a deputy prosecutor proposed that, in exchange for a plea of guilty, he would recommend a twenty-one year sentence to be served concurrently with the burglary and assault charges the defendant was then serving. The offer was communicated through counsel to Johnson, who agreed to accept it. However, when Johnson's counsel communicated his client's acceptance of the offer to the prosecutor, he was informed that a mistake had been made and that the offer had been withdrawn. Instead, the prosecutor proposed that, in exchange for Johnson's guilty plea, he would recommend a twenty-one year sentence to be served consecutively to the defendant's other sentences. Johnson rejected the new offer and elected to stand trial. After a mistrial, however, he elected to accept the prosecutor's new offer. Pursuant to the new agreement, Johnson was sentenced to a twenty-one year term to be served consecutive to his other convictions. Johnson then sought relief from the conviction through a writ of habeas corpus, alleging that the prosecution's first proposed plea bargain should have been enforced. The Supreme Court denied relief, holding that, in order to have violated a constitutionally protected interest, the plea bargain must have been executed. In Johnson's case, that meant that he must have plead guilty; "[o]nly after [Johnson] pleaded guilty was he convicted,

and it is that conviction which gave rise to the [constitutional] deprivation...." *Mabry v. Johnson*, 104 S.Ct. at 2546–47.

■ Applying *Mabry* to the present case does not necessitate a finding that petitioner's rights have not been violated. Initially, the court notes that a grant of immunity is different from a plea bargain in that it can never be formalized by a plea of guilty. On the contrary, the very nature of the agreement is the promise on the part of the government to do nothing. In addition, a grant of immunity differs from a plea agreement in that it in no way involves court approval. In the case of a plea agreement, the court in essence executes the agreement by accepting the plea of guilty. In the case of a grant of immunity, however, only two parties are involved. The government alone makes a decision not to prosecute in exchange for testimony which will, hopefully, lead to a greater number of indictments or convictions. The most that one granted immunity can do is to agree to testify and then await the call of the government. The fact that the government has never called upon Plaster to testify does not now entitle the government to breach its part of the bargain.

In addition, despite the arguments of the government, the Plaster agreement is not unenforceable for lack of consideration. Plaster, in serving his sentence in Wisconsin and in setting up a life over a period of fifteen years clearly relied on the promise that he would not be extradited to Germany. His failure to testify against Burt cannot be held against Plaster since he has never been asked to do so and has never refused to do so. It was through the sole fault of the government in losing the immunity agreement mailed from Rarick to Hart, and in, incredibly, not having any further communication between Rarick and Hart, that Plaster was never asked to fulfill his part of the bargain. Thus, the immunity agreement was, indeed, enforceable, and the failure of the government to fulfill its part of the bargain was a violation of Plaster's constitutional rights.

■ Furthermore, the decision in *Mabry* does not, as the government contends,

stand for the proposition that "fairness" has no place in the consideration of such agreements. The Court, instead, based its decision on the fact that Johnson's agreement to the second bargain was enforceable as voluntary and intelligent and "in no sense [was] the product of governmental deception." *Mabry*, 104 S.Ct. at 2548. The Court found it unnecessary to consider the fairness of the executory agreement, but did look to the fairness of the second, executed, plea bargain. In this case, by agreeing to testify against his codefendant, Plaster executed the immunity agreement. Therefore, the court may consider the conduct of the parties. The court concludes that it would be fundamentally unfair to allow the government to repudiate its grant of immunity after fifteen years of reliance by Plaster. Indeed, to allow conduct of this sort would be tantamount to sanctioning "governmental deception."

Finally, the government argues that there was no jeopardy to Plaster regarding prosecution in Germany, because it was questionable whether the United States was even authorized to return Plaster to Germany. According to the government, if the State and Defense Departments were under the impression that they could not return Plaster to Germany, any promise that Plaster would not be extradicted was not a benefit bestowed by Hart, but was rather merely a statement of law. The court does not find this argument to be convincing. First, the government has not shown that the State and Defense Departments indeed believed they could not extradite Plaster. Even assuming they did hold such a belief, however, any "promise" based on that belief could not be construed as a statement of law and would, in fact, confer a benefit to Plaster. Moreover, if the government's statements that they could not extradite Plaster were true, this would confirm the court's opinion that the understanding of the parties was that Plaster would not be returned to Germany. In addition, the court finds that this understanding was an integral part of the immunity agreement and must be enforced.

In view of the decision of this court that Hart had authority to promise freedom from extradition to Germany and that Plaster is therefore entitled to habeas corpus relief, the court does not find it necessary to consider the issue of whether petitioner was placed in double jeopardy.

Accordingly, this court finds that Colonel Hart and General Shellman had the authority to grant Plaster immunity from extradition; that they did, in fact, grant such immunity; that the agreement was enforceable; and that, as a result, Plaster may not now be extradited to Germany. The writ of habeas corpus shall, therefore, be granted in the Order accompanying this opinion.