Thomas J. WARD, Appellant,

v.

Herbert M. RUTHERFORD, III, United States Marshal for the District of Columbia, et al.

No. 89-5413.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 20, 1990.

Decided Dec. 7, 1990.

John G. Kester, with whom David D. Aufhauser and Howard W. Gutman, Washington, D.C. were on the brief, for appellant.

John C. Cleary, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Washington, D.C. were on the brief, for appellees.

Before: RUTH BADER GINSBURG, SILBERMAN and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Appellant Thomas J. Ward is a United States citizen whose extradition is sought by the United Kingdom. In this action for a writ of prohibition, Ward contends that Article III and the Fifth Amendment command that his extradition proceedings be conducted by an Article III judge, not by a magistrate. The district court upheld the constitutionality of the statute (18 U.S.C. § 3184) and the local rule (D.D.C. Rule 501(a)(5)) that expressly authorize magistrates to preside over international extradition proceedings. We affirm the district court's judgment.

I.

In keeping with United States–United Kingdom treaty prescriptions, the United Kingdom, in July 1989, requested the extradition of appellant Ward. Ward is wanted in Great Britain for trial on British Theft Act charges stemming from his alleged role in an illegal scheme to support the price of Guinness PLC stock during a 1986 takeover battle. Pursuant to 18 U.S.C. § 3184 and D.D.C. Rule 501(a)(5), the district court assigned the extradition complaint to a magistrate for hearing and decision. Ward both moved in the extradition proceeding and commenced this collateral action to establish his alleged right to a hearing before a district judge rather

than a magistrate. The magistrate stayed the scheduled extradition hearing pending district court resolution of Ward's collateral action.

Denying Ward's petition, the district judge first observed that the statutory authority of the magistrate is unambiguous. Under 18 U.S.C. § 3184, "any magistrate authorized so to do by a court of the United States" may issue a warrant for the arrest of a fugitive, and preside over and decide international extradition proceedings. The pertinent local rule, D.D.C. Rule 501(a)(5), provides that a magistrate appointed by the court pursuant to 28 U.S.C. § 631 "shall have the duty and power to ... [c]onduct international extradition proceedings." There can be no genuine dispute about the plain meaning of the relevant statute and rule.[1] We therefore turn to the constitutionality of assigning extradition requests to a United States magistrate.

### II.

Through extradition proceedings, one nation turns over custody of a person at the request of another nation, pursuant to a treaty between the two nations. *See generally* RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES §§ 475, 478 (1987). The purpose of an extradition hearing is to determine whether "the evidence [is] sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184. As the district court emphasized, " '[a]n extradition hearing is not the occasion for an adjudication of guilt or innocence.' " *Messina v. United States*, 728 F.2d 77, 80 (2d Cir.1984) (quoting *Melia v. United States*, 667 F.2d 300, 302 (2d Cir.1981)). Rather, the proceeding is essentially a "preliminary examination to determine whether a case is made out which will justify the holding of the accused and his surrender to the demanding nation." *United States v. Kember*, 685 F.2d 451, 455 (D.C.Cir.), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982). A magistrate presiding over the hearing thus performs an assignment in line with his or her accustomed task of determining if there is probable cause to hold a defendant to answer for the commission of an offense. *See* FED.R.CRIM.P. 5.1 (preliminary examination by federal magistrate).

Article III, the mainstay of appellant's challenge, provides that the "judicial Power of the United States, shall be vested in one supreme Court and in such inferior Courts as the Congress may from time to time ordain and establish." It further provides that such courts shall be staffed by judges who hold office during good behavior and whose compensation shall not be diminished during tenure in office. Article III "safeguards the role of the Judicial Branch in our tripartite system by barring congressional attempts 'to transfer jurisdiction [to non-Article III tribunals] for the purpose of emasculating' constitutional courts." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 850, 106 S.Ct. 3245, 3256, 92 L.Ed.2d 675 (1986) (quoting *National Ins. Co. v. Tidewater Co.*, 337 U.S. 582, 644, 69 S.Ct. 1173, 1208, 93 L.Ed. 1556 (1949) (Vinson, C.J., dissenting)). An extradition hearing conducted by a magistrate surely does not threaten the judicial branch with encroachment by a coordinate branch of government. In this regard, we stress that magistrates are appointed by and subject to the general supervision of the Article III judiciary. *See* 28 U.S.C. § 631. It bears repetition, moreover, that under 18 U.S.C. § 3184, a magistrate may conduct an extradition hearing only "when authorized so to do by a court of the United States."[2]

---

1. We note that, in addition to authorizing magistrates to conduct extradition hearings, 18 U.S.C. § 3184 qualifies as competent to conduct extradition proceedings "any judge of a court of record of general jurisdiction of any State." Such judges, who may be elected or hold fixed terms of appointment, of course, do not hold Article III offices.

2. Insofar as there may be limits to the power of Congress to create non-Article III tribunals *within the judiciary, see Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 76–87, 102 S.Ct. 2858, 2878–80, 73 L.Ed.2d 598 (1982); *United States v. Raddatz*, 447 U.S. 667, 681–84, 100 S.Ct. 2406, 2415–17, 65 L.Ed.2d 424 (1980), those limits are not exceeded here.

Ward's core argument, however, emphasizes the "personal" safeguard of Article III, *i.e.*, the "right to have claims decided by judges who are free from potential domination by other branches of government." *United States v. Will*, 449 U.S. 200, 218, 101 S.Ct. 471, 482, 66 L.Ed.2d 392 (1980). Ward contends that "where the personal liberty to remain in this country and under the protection of its laws is at stake, a litigant [and, particularly, a citizen of the nation] should at least be entitled to have his case heard by the most independent judge that the Constitution has to offer." Brief for Appellant at 24. But neither citizen nor alien in the United States has a constitutional entitlement "to the plenary consideration of every nature of claim by an Article III court." *Schor*, 478 U.S. at 848, 106 S.Ct. at 3255; *see also Palmore v. United States*, 411 U.S. 389, 407, 93 S.Ct. 1670, 1681, 36 L.Ed.2d 342 (1973) ("[N]either [the Supreme] Court nor Congress has read the Constitution as requiring every federal question arising under the federal law, or even every criminal prosecution for violating an Act of Congress, to be tried in an Art. III court before a judge enjoying lifetime tenure and protection against salary reduction.").

An extradition hearing, as we earlier observed, and underscore as crucial to our decision, is akin to a preliminary examination, a proceeding customarily handled by magistrates.[3] Furthermore, as the government highlights, actions taken by magistrates in international extradition matters are subject to habeas corpus review by an Article III district judge, with appellate review available thereafter. *See, e.g., In re Burt*, 737 F.2d 1477, 1482–85 (7th Cir.1984); *Plaster v. United States*, 720 F.2d 340, 349 (4th Cir.1983), *on remand*, 605 F.Supp. 1532 (W.D.Va.1985), *aff'd*, 789 F.2d 289 (4th Cir.1986).

The Supreme Court long ago explained that an international extradition proceeding

is not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him, but [is] rather of the character of those preliminary examinations which take place every day in this country before an examining or committing magistrate for the purpose of determining whether a case is made out which will justify the holding of the accused ... to ultimately answer to an indictment, or other proceeding, in which he shall be finally tried upon the charge made against him.

*Benson v. McMahon*, 127 U.S. 457, 463, 8 S.Ct. 1240, 1243, 32 L.Ed. 234 (1888). That explanation, the district court indicated and we agree, is no less persuasive today. *See Hooker v. Klein*, 573 F.2d 1360, 1367 (9th Cir.), *cert. denied*, 439 U.S. 932, 99 S.Ct. 323, 58 L.Ed.2d 327 (1978).[4] Considering

---

As the Supreme Court stated in *Schor*, summarizing the prevailing law:

Among the factors upon which we have focused are the extent to which the "essential attributes of judicial power" are reserved to Article III courts, and, conversely, the extent to which the non-Article III forum exercises the range of jurisdiction and powers normally vested only in Article III courts, the origins and importance of the right to be adjudicated, and the concerns that drove Congress to depart from the requirements of Article III.

478 U.S. 833, 851, 106 S.Ct. 3245, 3257, 92 L.Ed.2d 675 (1986). Extradition, akin to a preliminary hearing, does not implicate the "essential attributes of judicial power" and it certainly has not normally been vested *only* in Article III courts.

3. In contrast, *Gomez v. United States*, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), concerned the assignment to magistrates of a function, presiding over jury selection at a felony trial, integral to the trial itself and not customarily performed by magistrates. The Supreme Court held that the Federal Magistrates Act, 28 U.S.C. § 636, did not provide for the delegation, and specifically declined to reach the constitutional question presented. *Id.* 109 S.Ct. at 2246 n. 25. *See also id.* 109 S.Ct. at 2243 n. 16 (listing among criminal matters familiarly assigned to magistrates: "arrest warrants, search warrants, bail hearings, preliminary examinations, removal hearings, postindictment arraignments").

4. We further note that Ward's case is hardly analogous to *Ng Fung Ho v. White*, 259 U.S. 276, 281–85, 42 S.Ct. 492, 494–95, 66 L.Ed. 938 (1922), in which the Supreme Court held that a resident of the United States who proffers sufficient evidence of his citizenship may not be deported on executive order alone, but must be accorded a judicial trial on the issue of his citizenship. Ward is indeed a United States

the choice of and control over magistrates entrusted to Article III judges, and the availability of habeas corpus proceedings to review actions taken by the magistrate in an extradition matter, we are satisfied that the regime Ward confronts is constitutional. He is receiving the process due in the context at issue;[5] at the same time, our nation is honoring its reciprocal obligation to its treaty partner, the United Kingdom.

### Conclusion

Article III of the Constitution is not offended by the federal statute and district court rule under which the matter of Ward's extradition to the United Kingdom has been assigned to a magistrate. The district court, therefore, correctly denied Ward's petition for a writ of prohibition. The judgment of that court is accordingly

*Affirmed.*

citizen, but the current proceedings are scarcely aimed at stripping him of that status. Again, the magistrate's task is solely to determine whether the evidence suffices to warrant his surrender to a sister nation and treaty partner for trial. *See supra* p. 287.

**5.** Ward contends he is not receiving the "process" he is "due" because of the assignment of his extradition case to a magistrate instead of an Article III judge. As the government points out, this asserted Fifth Amendment due process objection has no independent grounding. *Cf.* Fallon, *Of Legislative Courts, Administrative Agencies, and Article III,* 101 Harv.L.Rev. 916, 978–79 n. 341 (1988) ("Nearly every question about the necessity of jurisdiction in an article III court could be reduced to a due process question.").