**In re the Matter of the EXTRADITION OF Paul Anthony Sayno TRINIDAD.**

**No. CR–09–70395 MISC (JCS).**

United States District Court, N.D. California.

Sept. 8, 2010.

---

Nathanael M. Cousins, United States Attorney's Office, San Jose, CA, for Plaintiff.

Cristina C. Arguedas, Raphael M. Goldman, Arguedas, Cassman & Headley, LLP, Berkeley, CA, Shawn Halbert, Federal Public Defender, San Francisco, CA, for Defendant.

## ORDER GRANTING REQUEST FOR CERTIFICATE OF EXTRADIT-ABILITY

JOSEPH C. SPERO, United States Magistrate Judge.

### I. INTRODUCTION

Before the Court is the request by the United States, representing the Republic of Latvia ("Latvia"), for a certificate of extraditability of Paul Anthony Sayno Trinidad ("Trinidad"), a citizen of the United States who is charged with "Immoral Actions With a Minor," a felony under Section 162(2) of the Criminal Law of Latvia. Mr. Trinidad has served in the armed forces of the United States for many years. During a period of time when he was not on active duty, he was in Latvia where he was arrested. While on release, he returned to the United States. Latvia has requested a certificate of extraditability.

The key issues in dispute are whether Latvia has satisfied its obligations under the provisions of the Extradition Treaty with Latvia ("The Treaty"): 1) to provide a copy of the warrant or order of arrest in this case; 2) to describe adequately each of the elements of the offense; and 3) to show probable cause to believe that Trinidad committed each of the elements of the crime on which the request for extradition is based.

The court gave Latvia the chance to correct or cure the inadequacies in it submission, in particular, with respect to the issue of probable cause. Multiple hearings were held on the matter with the last hearing occurring on July 27, 2010. As a result of the government's most recent submission of an additional statement of one of the alleged victims in this case, the Court now finds that Latvia has satisfied its obligations under the Treaty and has sustained its burden of showing probable cause to believe that Trinidad committed each element of the crime charged. In particular, there is probable cause to believe that Trinidad knew that the victim was under 14 years of age. For the reasons stated more fully below, the request for a certificate of extradition is GRANTED.

### II. BACKGROUND

#### A. Events Leading Up to Trinidad's Arrest in the United States

According to the United States, Mr. Trinidad was arrested in Latvia on January 6, 2007. He was released two days later with restrictions imposed, one of which required him not to leave the country. Mr. Trinidad was in Latvia on a visa, which was set to expire. He was originally told that the case would conclude by April 26—the date on which his visa was set to expire.

On March 30, 2007, the Republic of Latvia Riga District Court issued a criminal indictment, in a document entitled "The Decision to Prosecute." Doc. # 59–2. These charges were based on the allegation that on December 27, 2006, Mr. Trinidad lured two girls, one aged 16 and one aged 13, to his rented apartment in Latvia "knowing that M.C. was 16 years old, while K.L. was 13 years old" where he then

performed lewd sexual acts. Trinidad was charged with a violation of Criminal Law section 162 paragraph 2 with respect to K.L. That section forbids Immoral Acts with a Minor (where the minor is a juvenile).

The charges against Trinidad involving K.L. form the basis of the current request for extradition. Despite references in the Decision to Prosecute to a 16 year old named M.C., the charging document is clear that only the conduct with respect to K.L. is charged. All parties stipulated that only the charges respecting K.L. are at issue in the extradition.

On April 19, 2007, Mr. Trinidad was advised that he would be prosecuted. It was unclear to Trinidad that he would be permitted to remain in Latvia beyond April 26, 2007—the date his visa was set to expire. Faced with the choice of violating the country's immigration laws or violating his release conditions, and having heard no response back from the prosecutor in response to his inquiry, Mr. Trinidad chose to comply with the immigration laws, and left the country so as not to overstay his visa. *See* Letter from P.A. S. Trinidad to Embassy of the United States of America, dated April 20, 2007. Docket No. 17–1. This course of action was at least permitted by Latvian authorities: he was detained at the airport and then allowed to leave the country for the United States. *See* Docket No. 16 (Gov't Ex. 1 & Defense Ex. 8; Trinidad Decl. ¶ 6).

Mr. Trinidad was tried *in abstentia* in Latvia and convicted of the offense of "Immoral Acts With a Minor" in violation of the Criminal Law of Latvia, Section 162(2). On August 21, 2008, a Judgment was issued against Trinidad by the Riga Regional court, Criminal Matters Division in criminal case number 11519000207. Judgment, PT 12–24. *See* Docket No. 46–1. Mr. Trinidad was sentenced to two years in prison. *Id.*

In the meantime, Mr. Trinidad, a United States citizen who has served for many years in the United States Air Force, was deployed to Iraq from September, 2007 to January 31, 2008. Since his return to this Country, he has resided in Novato, California, in this judicial district.

## B. The Request for Extradition and Provisional Arrest of Trinidad

On April 30, 2009, the Republic of Latvia filed a Complaint for Provisional Arrest with a View Towards Extradition, pursuant to 18 U.S.C. § 3184 [Docket No. 1], and this Court issued an arrest warrant on the same day. *See* Docket No. 2. On May 28, 2009, Mr. Trinidad was arrested by United States Marshals and taken into custody. *See* Docket No. 11.

## C. Proceedings in this Court

On June 8, 2009, Mr. Trinidad filed a Motion for Release on Bail. *See* Docket No. 10. On September 8, 2009, following substantial briefing and several bail hearings, Trinidad's bail request was granted.

Subsequently, the Court held several hearings on Latvia's request for a certificate of extraditability, including hearings on May 12, 2010 and July 27, 2010. In advance of each hearing, Latvia was given the opportunity to, and did file, additional evidence in support of its application. (*see* Docket Nos. 69, 77) and Trinidad was permitted the opportunity, and did file, responses to those evidentiary submissions. *See* Docket Nos. 70, 71 and 80.

## D. Trinidad's Contentions

Trinidad argues that the United States has failed to satisfy three requirements under the Treaty: 1) provide a copy of the arrest warrant, 2) provide a statement of the essential elements of the offense, and 3) provide evidence establishing probable

cause to believe that Trinidad committed the offence for with extradition is sought.

## III. ANALYSIS

### A. Requirements for Extradition

 Under 18 U.S.C. § 3184, where a person has been brought before the court on an extradition complaint, a determination of extraditability is proper where the following requirements have been met:

(1) the extradition judge is authorized to conduct extradition proceedings;

(2) the court has jurisdiction over the fugitive;

(3) the extradition treaty is in full force and effect;

(4) the fugitive has been charged or convicted in the requesting state of conduct that would also constitute a crime in the United States;

(5) the crimes for which surrender is requested are covered by the treaties; and

(6) there is probable cause to believe that a crime was committed and that the fugitive committed it.

See *Zanazanian v. United States*, 729 F.2d 624, 626 (9th Cir.1984); *see also Republic of France v. Moghadam*, 617 F.Supp. 777, 780–781 (N.D.Cal.1985).

It is undisputed that the first five requirements are met. First, district court judges are expressly authorized to conduct extradition hearings under 18 U.S.C. § 3184 and the district court in this district specifically permits magistrate judges to conduct such proceedings under Criminal Local Rule 7–1(b)(13). *See Ward v. Rutherford*, 921 F.2d 286, 289 (D.C.Cir. 1990) (holding that local rule that authorized magistrate judges to conduct extradition hearings did not violate Article III of the United States' Constitution). Second, the court has jurisdiction over Trinidad because he is present before the Court. *See In re Kuri*, 2006 WL 1663536 at *6

(D.Ariz. June 14, 2006). Third, there is an extradition treaty between the United States and Latvia that is in full force and effect. *See* Beribboned Declaration of Patricia E. McDonough, an attorney in the Office of the Legal Adviser for the Department of State, attesting that there is a treaty in full force and effect between the United States and the Republic of Latvia. Exhibit 2, Attaching Diplomatic Note Number 3.1.3.–45–9911P ("McDonough Decl."), and the Extradition Treaty between the United States and the Republic of Latvia of December 7, 2005 ("Treaty"). Fourth, Trinidad is charged with immoral acts with a minor under the laws of Latvia—conduct that is also a crime in the United States. *See* Cal.Penal Code § 288(a) (lewd or lascivious acts with a minor). Fifth, the crime for which extradition is sought is covered by the extradition treaty, which defines an "extraditable offense" as one that is "punishable under the laws in both States [the U.S. and Latvia] by deprivation of liberty for a period of more than one year or by a more severe penalty." *See* Treaty, Article 2(1).

The parties dispute, however, whether the requirements of the extradition treaty have been satisfied. As stated above, Trinidad argues that Latvia has not satisfied its obligations under Article 7 of the Treaty, because it has failed to provide Trinidad with a copy of the original arrest warrant, and has failed to describe the essential elements of the offense for which extradition is requested. As a result of the failure to describe adequately the elements of the offense, and the failure to provide evidence of *mens rea*, Trinidad argues that Latvia has not satisfied the probable cause requirement.

If the Court finds that all of the requirements have been met, the findings are incorporated into a certificate of extraditability, which is "certified" and forwarded to

the State Department. 18 U.S.C. § 1384. The Secretary of State makes the ultimate decision regarding whether to surrender Trinidad to Latvia. 18 U.S.C. § 3186.

## B. Article 7 Requirements
### 1. Provide a copy of the arrest warrant

The Treaty between the United States and Latvia provides that extradition may occur "pursuant to the provisions of this Treaty." Treaty, Art. I. ("Obligation to Extradite"), Docket No. 46, PT 46–1 at PT00051. Here, Mr. Trinidad argues that the government has not satisfied its obligations under the Treaty because it has failed to produce a copy of the arrest warrant, as specifically required under the Treaty. The United States argues that it has complied with the Treaty by attaching what it calls "the arrest order" dated April 26, 2007. *See* Docket No. 36–2, filed September 3, 2009.

Article 7(3) of the Treaty lists all of the documents required before an individual may be extradited to Latvia for prosecution, including: "a copy of the warrant or order of arrest issued by a judge, court or other authority competent for this purpose." Docket No. 46–1 at PT0056. Because Mr. Trinidad was tried and convicted in Latvia *in absentia,* the requirements of Article 3 are applicable. Treaty, Art. 7(4)(d).[1]

■ The April 26, 2007 "arrest order" satisfies this requirement. This order states in part that it is the decision of the court "to apply a security measure—detention of the accused person Paul Anthony Trinidad . . . ". Docket No. 36–2 at 3. Trinidad argues that the arrest order provided by the United States was issued *after* Mr. Trinidad's initial arrest and

charges in Latvia and after Mr. Trinidad had departed Latvia for the United States. There is nothing in the Treaty that prescribes the specific form of order, or that the order or arrest warrant must be issued with the original charges. Latvia has produced an order which requires Trinidad's arrest, and this satisfies its obligation to produce "a copy of the warrant or order of arrest issued by a judge, court, or other authority competent for this purpose." Treaty, Art. 4.

### 2. Provide a description of the essential elements of the offense

■ In addition to the requirement that Latvia provide a copy of the arrest warrant, Article 7, paragraph 2 of the Treaty requires Latvia to provide Mr. Trinidad with "a statement of the relevant text of the provisions of the laws describing the essential elements of the offense for which extradition is requested." Treaty, Art. 7(2)(c). In its original extradition request, the United States provided the following description of the pertinent offense, Section 162(2): "For a person who commits immoral acts with a juvenile, the applicable sentence is deprivation of liberty for a term not exceeding six years." *See* Docket No. 46–1 at PT00027.

Mr. Trinidad argues that this description fails to describe adequately the essential elements of the offense for three reasons: 1) there is no description of the *mens rea* requirement; 2) there is no definition of "juvenile" found in the statute or other materials provided by the government; and 3) there is no description of what constitutes "immoral acts" and there-

---

1. Paragraph 4, which applies to requests for extradition relating to a person who has been convicted of the offense for which extradition is sought states specifically "in the case of a person who has been convicted *in absentia,* the documents required by paragraph 3" are required.

fore what specific acts are proscribed by the statute.

The Court finds that the November 19, 2009 letter from Latvia provides a better explanation of the charges, and adequately addresses Trinidad's first concern. The prosecutor in Latvia explains the *mens rea* requirement as follows: "Pursuant to the Criminal Law of Latvia the given criminal offence may be committed only intentionally, that means that during the investigation evidences that P.A.S. Trinidad knew age of K.L. had to be obtained." United States' Reply, Exh. 1, ¶ 1 (letter dated November 19, 2009, from the prosecutor in Riga, Latvia). In addition, the indictment states that Trinidad "acted with the intent to engage in lewd acts, and knowing that ... K.L. was 13 years old." Reply, Exh. 2. The Court concludes that this description is sufficient to put Trinidad on notice of the *mens rea* requirement: the criminal court in Latvia was required to find that Trinidad knew the age of the victim at the time of the offense.

In addition, Latvia has provided a definition of "juvenile" for purposes of Section 162 of the Criminal Laws of Latvia. Docket No. 69–1("a juvenile is a person who has not attained fourteen years of age"). Finally, Latvia has provided a definition of the term "immoral acts" so as to put Trinidad on notice of the *actus reus* contemplated by this phrase "immoral acts." *Id.* (describing immoral acts). These are sufficient to satisfy Latvia's obligation to describe the essential elements of the charged offense.

## C. Probable Cause

### 1. Legal Standards Governing Probable Cause Determination

█ In an extradition proceeding, "the magistrate does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is competent evidence" to support a find-ing of probable cause as to the charged offense. *Quinn v. Robinson,* 783 F.2d 776, 815 (9th Cir.1986). The Court must determine whether there is "evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Coleman v. Burnett,* 477 F.2d 1187, 1202 (D.C.Cir.1973).

█ In making this determination, the extradition judge is not limited by the Federal Rules of Evidence. *Mainero v. Gregg,* 164 F.3d 1199, 1206 (9th Cir.1999). Rather, "[t]he credibility of witnesses and the weight to be accorded their testimony is solely within the province of the extradition magistrate." *Quinn,* 783 F.2d at 815. While the formal rules of evidence do not apply, the extradition judge's discretion must be exercised consistent with the distinction between contradictory and explanatory evidence. *Mainero v. Gregg,* 164 F.3d at 1207, n. 7. In *Mainero,* the Ninth Circuit held that "evidence that explains away or completely obliterates probable cause is the only evidence admissible at an extradition hearing, whereas evidence that merely controverts the existence of probable cause, or raises a defense, is not admissible." *Id.* As numerous courts have noted, this standard is often difficult to apply. *See, e.g., In re Extradition of Singh,* 170 F.Supp.2d 982, 994 (E.D.Cal.2001) ("In practice, this standard is extremely difficult to apply"); *Gill v. Imundi,* 747 F.Supp. 1028, 1040 (S.D.N.Y.1990) (referring to distinction as "somewhat murky"). One district court, over a century ago, responded to the question of whether an extraditee is entitled to an extensive extradition hearing as follows:

If this were recognized as the legal right of the accused in extradition proceedings, it would give him the option of insisting upon a full hearing and trial of his case here; and that might compel

the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter. The result would be that the foreign government, though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here. This would be in plain contravention of the intent and meaning of the extradition treaties.

*In re Wadge,* 15 F. 864, 866 (S.D.N.Y.1883) (cited with approval in *Collins v. Loisel,* 259 U.S. 309, 316, 42 S.Ct. 469, 66 L.Ed. 956 (1922) and *Charlton v. Kelly,* 229 U.S. 447, 461, 33 S.Ct. 945, 57 L.Ed. 1274 (1913)).

More recently, another district court articulated the same theme, stating that while the distinction between explanatory and contradictory evidence is difficult to apply, "the purpose behind the rule is reasonably clear." *Matter of Sindona,* 450 F.Supp. 672, 685 (D.C.N.Y.1978). The court in *Sindona* explained:

> In admitting "explanatory evidence," the intention is to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause. The scope of this evidence is restricted to what is appropriate to an extradition hearing. The decisions are emphatic that the extraditee cannot be allowed to turn the extradition hearing into a full trial on the merits.

*Id.*

■ Conclusory statements alone, however, will not suffice to establish probable cause. As the Supreme Court has said, the magistrate "should not accept without question the complainant's mere conclusions that the person whose arrest is sought has committed a crime." *Shapiro v. Ferrandina,* 355 F.Supp. 563 (S.D.N.Y. 1973), *affirmed as modified,* 478 F.2d 894 (2d Cir.1973) *citing Giordenello v. United States,* 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). This independent review allows a magistrate to perform a " 'neutral and detached' function and not serve merely as a rubber stamp...." *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

### 2. Application of Legal Standard

■ The Court finds that the most recent evidence provided by Latvia is sufficient to establish probable cause. First, Latvia has provided sufficient evidence from which an inference could be drawn that the acts allegedly committed by Trinidad against K.L. were "immoral acts" within the meaning of the statute. Second, Latvia has provided sufficient evidence from which an inference could be drawn that Trinidad was aware that the victim was under 14 at the time of the alleged offense. The most recent submission from the government of Latvia provides the requisite information upon which an inference could be drawn that Trinidad knew K.L. was under 14 at the time of the offense. In particular, the government has submitted an interview of K.L. from January 10 2007, in which K.L. provides further details about her conversation with Trinidad about her age:

> Also I can testify that immediately after our introduction at T/C/ Origo and when we crossed Satekles street, in the middle on a small spot we both with Trinidad stopped because we missed the green light to cross the street, but [MC] did not start to cross the street. Exactly in that moment I asked Trinidad how old

he was, and he answered that he was 10 years older than me, then I replied in this case he was 23 because I was 13. He said that he was not 23 years old, and he would tell later his real age. Furthermore, Trinidad said that it could not be that I was only 13, but I repeated that yes.

*See* Docket No. 77 (PT91–92). This recent submission establishes probable cause to believe that K.L. told Trinidad that she was 13 years old, before the commission of the alleged immoral acts. Trinidad argues that this statement demonstrates that he did not believe her when she told him she was 13. If this matter had proceeded to trial, Trinidad could raise as a defense that he did not believe K.L. when she told him that she was 13 years old. Here, however, the standard to be applied is probable cause. This Court has sufficient evidence from which to assess whether there is probable cause and is not merely relying upon the conclusions of the Criminal Court in Riga. *See In re Extradition of Ribaudo*, 2004 WL 213021 at *5 (S.D.N.Y. Feb. 3, 2004) (in an extradition proceeding the magistrate's review of the proffered evidence "cannot be a mere ratification of the bare conclusions of others.")

The evidence before the Court is sufficient to establish probable cause to believe that Trinidad committed the alleged immoral acts, and also that Trinidad knew the victim met the definition of a "juvenile" under Section 162(2).

## IV. CONCLUSION

For the reasons stated above, the request for the a certificate of extraditability of Paul Anthony Sayno Trinidad is GRANTED.

### CERTIFICATE OF EXTRADITABILITY

Having heard and considered the evidence in the above-captioned matter under 18 U.S.C. § 3184 *et seq.*, this Court finds and orders as follows:

1. This Court has subject matter jurisdiction to conduct the extradition proceedings.

2. This Court has personal jurisdiction over Paul Anthony Sayno Trinidad.

3. This Court is authorized to conduct the extradition proceeding under Criminal Local Rule 7–1(b)(13) and upon a referral from U.S. District Court Judge Charles R. Breyer.

4. There exists a valid extradition treaty between the Republic of Latvia and the United States ("Treaty"), and that Treaty is in full force and effect.

5. The offense of immoral acts with a juvenile under Section 162(2) of the Criminal Law of Latvia is an extraditable offense under the terms of the Treaty, this crime falling within the list of offenses set out in the Treaty, as well as being criminal under the laws in both Latvia and the United States and punishable by deprivation of liberty for a period of one year or more.

6. Latvia has provided the documents and information required for extradition under Treaty Article 7(2)(a), documents, statements, or other types of information which describe the identity and probable location of the person sought; Article 7(2)(b), information describing the facts of the offense and the procedural history of the case; Article 7(2)(c), a statement of the relevant text of the provisions of the laws describing the essential elements of the offense for which extradition is requested; Article 7(2)(d), a statement of the relevant text of the provisions of law prescribing punishment for the offense; Article 7(2)(e), a statement of the provisions of law describing any time limit on the prosecution; and Article 7(2)(f), the documents, statements, or other types of information speci-

fied in paragraphs 3 or 4 of this Article, as applicable.

7. Latvia has provided the documents required by Treaty Article 7(3), specifically Article 7(3)(a), a copy of the warrant or order of arrest issued by a judge, court, or other authority competent for this purpose; Article 7(3)(b) a copy of the charging document; and Article 7(3)(c), such information as would provided a reasonable basis to believe that the person sought committed the offense for which extradition is sought.

8. Latvia has provided the documents and information required by Treaty Article 7(4), specifically Article 7(4)(a), a copy of the judgment of conviction; Article 7(4)(b), information establishing that the person sought is the person to whom the finding of guilt refers; Article 7(4)(c), a copy of the sentence imposed and a statement establishing to what extent the sentence has been carried out; and, Article 7(4)(d), the documents required by Treaty Article 7(3), specified above, in that Trinidad was convicted in Latvia in absentia. And, 9. There is competent legal evidence to provide a reasonable basis to believe that Paul Anthony Sayno Trinidad, the person whose extradition is sought, committed the offense of immoral acts with a juvenile under Section 162(2) of the Criminal Law of Latvia.

Accordingly, the Court hereby certifies the above findings to the Secretary of State in order that a warrant may issue for the surrender of Paul Anthony Sayno Trinidad to Latvia, and orders that Mr. Trinidad be committed to the custody of the United States Marshals Service for surrender to Latvia pursuant to 18 U.S.C. § 3184.

IT IS SO ORDERED.