11-0462-cv
Skaftouros v. United States

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2011

(Argued: August 25, 2011                                        Decided: December 20, 2011)

Docket No. 11-0462-cv

-------------------------------------------------

DIMITRIOS SKAFTOUROS,

*Petitioner-Appellee*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellant.*

-------------------------------------------------

Before: CABRANES, HALL, and LOHIER, *Circuit Judges.*

Appeal from orders of the United States District Court for the Southern District of New

York (Deborah A. Batts, *Judge*), entered December 20, 2010, and January 13, 2011, granting fugitive's

petition for a writ of habeas corpus under 28 U.S.C. § 2241, and denying the United States's motion

to reconsider. We hold that the District Court erred in placing the burden of proof in the habeas

proceeding on the United States and in consequently concluding that the petitioner was being held

unlawfully due to the Government's failure to prove that a Greek arrest warrant was valid as a

matter of Greek law and that the applicable Greek statute of limitations had not expired.

Distinguishing *Sacirbey v. Guccione*, 589 F.3d 52 (2d Cir. 2009), we reaffirm that district courts

considering habeas petitions stemming from extradition orders should not engage in an analysis of

the demanding country's laws and procedure, except to the limited extent necessary to ensure that

the requirements of the applicable extradition treaty have been satisfied. Finding that the

1

Government's showing here was sufficient to establish that the Treaty of Extradition between the United States and Greece has been satisfied, we reverse the judgment of the District Court, vacate the writ of habeas corpus, and remand with instructions to enter a certification of extraditability and order of commitment.

RICHARD B. LIND, New York, NY, *for Petitioner-Appellee Dimitrios Skaftouros.*

HARRIS FISCHMAN, Assistant United States Attorney (Preet Bharara, United States Attorney, *on the brief*, Justin S. Weddle, Assistant United States Attorney, *of counsel*), Office of the United States Attorney for the Southern District of New York, New York, NY, *for Respondent-Appellant the United States of America.*

JOSÉ A. CABRANES, *Circuit Judge*:

This appeal requires us to clarify the proper role of a district court considering a petition for a writ of habeas corpus challenging an extradition order.[1]

Petitioner-appellee Dimitrios Skaftouros ("Skaftouros"), wanted in his native Greece on charges including direct complicity in the murder of a minor, was certified as extraditable after a hearing in the United States District Court for the Southern District of New York before Magistrate Judge Theodore H. Katz, notwithstanding certain arguments he made regarding Greece's compliance, *vel non*, with its own criminal procedure. He petitioned for a writ of habeas corpus before District Judge Deborah A. Batts, arguing that he was "in custody in violation of the

---

[1] A word on the caption of this case: Petitioner-appellee improperly named the United States as the respondent in his petition for a writ of habeas corpus. The Supreme Court has made clear that "[w]henever a [28 U.S.C.] § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004). However, this rule is "not jurisdictional in the sense of a limitation on subject-matter jurisdiction." *Id.* at 451 (Kennedy, *J.*, concurring). Therefore, the Government may waive objections to the immediate-custodian rule. *Id.* at 452. We find the Government has done so here, and proceed to examine the Government's appeal on the merits.

Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), because two requirements of the Extradition Treaty between the United States and Greece ("the Treaty")[2] had not been met.[3]  First, he argued that the warrant for his arrest in Greece, issued by the Magistrate's Court of Athens, is invalid because, though signed by an investigating magistrate, it was not signed by the Clerk of that court. **[A 30–36.]**  Second, he argued that the Greek statute of limitations applicable to his offenses had expired. **[A 36–45.]**  These arguments persuaded the District Judge to grant his petition and dismiss the extradition proceedings against him. **[*See* A 238–50.]**

We hold that the District Court erred by placing the burden of proof in the habeas proceeding on the United States (or the "Government") rather than on Skaftouros, the petitioner, and by engaging in an improper inquiry into Greece's compliance with its own laws.  We reaffirm that a court considering an extradition request—or a petition for habeas corpus seeking collateral review of an extradition order—may review the demanding government's compliance with its own laws only insofar as it is necessary to ensure that the provisions of the federal extradition statute and relevant extradition treaty have been met.  We further hold, upon a review of the record, that Skaftouros has not carried, and cannot carry, his burden of proving that the requirements of the Treaty were not met.

Accordingly, we reverse the judgment of the District Court, vacate the writ of habeas corpus, and remand the cause to the District Court with instructions to enter a certificate of extraditability and order of commitment.  In doing so, we do not pass judgment on Skaftouros's arguments as a matter of *Greek* law.  There will be opportunity enough for Skaftouros to raise these arguments anew

---

[2] Extradition Treaty Between the United States and the Hellenic Republic, May 6, 1931, 47 Stat. 2185 (1931).

[3] Skaftouros also alleged that the evidence introduced by the Government did not give rise to probable cause to believe he committed the charged crimes, but the District Court rejected this argument, and it is not a subject of this appeal.

before the courts in Greece, which are manifestly more capable of rendering a proper decision on those issues than an American court in an extradition—or a habeas—proceeding.

**BACKGROUND**

**A.    Skaftouros's Alleged Crime, Flight, and Arrest**

The factual background set forth below is drawn from a 71-page judgment of the Council of Magistrates in Athens, dated April 3, 1991, to which we will refer in familiar parlance as "the indictment." **[A 36-106]**  Based on the allegations contained in the indictment, both the Magistrate Judge, who issued the certificate of extraditability, and the District Judge, who vacated it, determined that there was probable cause to believe that Skaftouros is guilty of the offenses charged.  *See In re Extradition of Dimitrios Skaftouros*, 643 F. Supp. 2d 535, 547-52 (S.D.N.Y. 2009) ("*Skaftouros I*"); *Skaftouros v. United States*, 759 F. Supp. 2d 354, 357-59 (S.D.N.Y. 2010) (*"Skaftouros II"*).  We do not suggest, much less confirm, that these allegations are true, an issue which presumably will be explored in due course by the relevant authorities in Greece.

Skaftouros, it is alleged, was directly complicit in a botched kidnaping, which resulted in the murder of a 16-year-old boy, Ioannis Tsatsanis.  In early 1990, three of Skaftouros's accomplices concocted a scheme by which they would kidnap Tsatsanis (known in the neighborhood as Marselino), in hopes that his father would pay a large ransom.  **[A 51–52.]**  Because the three were acquainted with Marselino and did not want to be identified by him, they enlisted Skaftouros to carry out the kidnaping.  Skaftouros, in turn, recruited two additional men to help him. **[A 51–52.]** On March 18, 1990, Marselino's acquaintances drove him to a location on the outskirts of Athens, where Skaftouros and his two recruits staged an ambush. **[A 52–53.]** After feigning an attack on Marselino's acquaintances, they handcuffed Marselino, drew a hood over his head, and drove him to

4

a house in an Athens suburb, where he was held captive at gunpoint for the next several days. **[A 52–54.]**

The plan quickly unraveled after the kidnappers determined that Marselino likely recognized the voices of two of his acquaintances during their visits to the house where he was being held. **[A 59–60.]** On the evening of March 21, 1990, Skaftouros met with three other accomplices at a tavern, whereupon the group decided to kill Marselino rather than risk identification by him. **[A 59–60.]** Later that night, Skaftouros, along with three accomplices, loaded Marselino into a car and drove him to a remote sheepfold belonging to a relative. **[A 47–48, 63.]** While Skaftouros served as a lookout, his three accomplices led Marselino to a freshly dug pit, where one of them shot and killed him using Skaftouros's revolver. **[A 63, 65.]** The following day, Skaftouros told a friend that they had murdered someone the previous night. **[A 66.]**

Skaftouros fled Greece for Italy in May 1990. **[A 133.]** A month later, Marselino's body was discovered, after it had been dug up and partially eaten by dogs. **[A 47.]** Within a matter of days, the Greek authorities extracted a confession from one of the accomplices, who informed them that Skaftouros had also participated in the crimes. **[A 49.]** On June 22, 1990, the Investigating Magistrate for the Magistrate's Court of Athens issued a warrant for Skaftouros's arrest. **[A 111, 115.]** The warrant charged Skaftouros with "being an immediate accessory to premeditated murder" and "kidnapping a minor child for ransom." **[A 115.]** Though the Investigating Magistrate signed the warrant, the signature line of the Clerk was left blank. Instead, according to the translation of the warrant provided by Greece to the U.S. Department of State, the following notation was made in place of the Clerk's signature: "Faces an impediment due to the late hour." **[A 115.]**

On April 3, 1991, the Council of Magistrates in Athens issued the indictment, charging Skaftouros with kidnapping a minor and direct complicity in the intentional murder of a minor. **[A**

5

**95, 102.]** According to Greek authorities, the indictment was legally served by substitute service on or about May 4, 1991. **[A 130, 214.]** As proof, the Greek authorities provided copies of an April 17, 1991, letter from the prosecutor to the Piraeus Police Department requesting that police serve the indictment on Skaftouros, and a response from the Piraeus Police Department dated May 6, 1991, confirming that service had been effected by delivery to Skaftouros's mother.[4] **[A 212, 213, 283, 282.]** However, the Greek authorities did not submit an original return of service, which Skaftouros argues is the only acceptable proof that service was effected. **[A 207, 210, 216.]** After Skaftouros failed to appear to face the charges, the District Attorney of Appeal of Athens suspended the proceedings by an order dated October 24, 1991 (the "October 1991 Order"), pending Skaftouros's appearance or arrest on the charges in the indictment. **[A 130, 214.]** The Government, relying on letters provided by the Greek authorities, argues that, by virtue of the October 1991 Order, the statute of limitations was extended from twenty to twenty-five years. **[A 195, 198; Blue 4, 45.]**[5]

In 1992, Skaftouros illegally entered the United States by way of Canada and he has remained here since. **[A 133.]** On May 29, 2008, federal law enforcement agents who had been tracking Skaftouros detained him for questioning in New York City. **[A 133.]** Although Skaftouros presented false identification to the agents, they suspected he was the fugitive wanted in Greece for Marselino's abduction and murder, and in order to permit further investigation, therefore charged him with making false statements. **[A 133.]** Following his arrest, Skaftouros confessed that he had

---

[4] The April 17, 1991, letter from the Greek prosecutor contained the following notation: "Urgent (If he is not traced, the Bill should be served to his relatives with the justification that his place of residence is unknown)." **[A 212.]** Skaftouros has not argued that service on his mother is invalid under Greek law; rather, as discussed below, he argues that the Government has not produced adequate proof of service on his mother. **[*See* A 207.]**

[5] According to a translation provided to the District Court by the Greek authorities, Article 113 of the Greek Criminal Code provides that "[t]he deadline of the prescription is suspended as long as the criminal prosecution cannot start or be continued according to a provision of the law." However, the suspension "cannot last more than five years in respect to felonies." **[A 195, 205.]**

6

provided his car in order to assist in Marselino's abduction, but denied any complicity in the murder. **[A 133.]** He also admitted that he had fled Greece in order to avoid arrest. **[A 133.]**

**B.      Relevant Provisions of the U.S.–Greece Extradition Treaty**

The U.S.–Greece extradition treaty contains provisions similar or identical to those contained in most U.S. extradition treaties.  Under Article I, the parties agree that they

> shall, upon requisition duly made as herein provided, deliver up to justice any person, who may be charged with, or may have been convicted of, any of the crimes or offenses specified in Article II  . . . provided that such surrender shall take place only upon such evidence of criminality, as according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had been there committed.

*Id.* art. I **[A 19–20.]**  Murder is among the offenses specified in Article II of the Treaty, which also makes clear that "[e]xtradition shall . . . take place for participation in any of the crimes or offenses before mentioned as an accessory before or after the fact." *Id.* art. II(27). **[A 20, 23.]**

Two other provisions of the Treaty are especially relevant to this appeal.  Article V effectively prohibits extradition if the statute of limitations in either country for the subject offense has expired:

> A fugitive criminal shall not be surrendered under the provisions hereof, when from lapse of time or other lawful cause, according to the laws of either of the surrendering or the demanding country, the criminal is exempt from prosecution or punishment for the offense for which the surrender is asked.

*Id.* art. V. **[A 24.]**  There is no applicable U.S. statute of limitations in this case because the crime charged is a capital offense.  *See* 18 U.S.C. § 3281 ("An indictment for any offense punishable by death may be found at any time without limitation.").[6]  The Greek statute of limitations for murder

---

[6] Skaftouros is charged in Greece with being an "immediate accessory to premeditated murder." **[*See* A-113, 114, 115.]** The analogous charge in the United States is murder in the first degree—that is, "murder perpetrated by . . . any . . . kind of willful, deliberate, malicious, and premeditated killing." 18 U.S.C. § 1111.  (As an "immediate accessory" to the murder, Skaftouros

7

of the type charged here is twenty years, although, as discussed above, Greek authorities state that the limitations period has been extended to twenty-five years by virtue of the October 1991 Order adjourning the prosecution.

Article XI of the Treaty describes the evidentiary showing that the demanding country must make in order to secure the arrest and extradition of a fugitive in the asylum country:

> If . . . the fugitive is merely charged with crime, a duly authenticated copy of the warrant of arrest in the country where the crime was committed, and of the depositions upon which such warrant may have been issued, shall be produced, with such other evidence or proof as may be deemed competent in the case.

Treaty art. XI. **[A 28.]** Skaftouros, of course, fled Greece before Marselino's body was discovered, and thus is "merely charged with [a] crime." *Id.*

C.    **Procedural History**

On June 9, 2008, the Greek government transmitted a request to the U.S. Department of State for the "provisional arrest" of Skaftouros to be followed by his extradition to face charges of direct complicity in the murder of a minor. **[A 117.]**[7] In support of its extradition request, Greece submitted the warrant for Skaftouros's arrest, dated June 22, 1990, as well as the

---

would be punishable as a principal under the U.S. criminal code. *See id.* § 2.) Because first-degree murder under § 1111 is punishable by death or imprisonment for life, *see id.* § 1111(b), we consider it to be a capital offense. *See United States v. Payne*, 591 F.3d 46, 59 (2d Cir. 2010) ("An offense 'punishable by death,' within the meaning of [18 U.S.C.] § 3281, is one for which the statute authorizes death as a punishment, regardless of whether the death penalty is sought by the prosecution or ultimately found appropriate by the factfinder or the court."). Therefore, pursuant to § 3281, there is no applicable U.S. statute of limitations to be applied in this case.

[7] Although Skaftouros was also indicted for kidnapping, Greece's extradition request is based solely on the murder charge. It appears that the reason for excluding the kidnapping charge is that the statute of limitations for that crime had expired. In contrast, with respect to the murder charge, Greece explained in its extradition request that, though "[t]he above crime . . . is barred 20 years after the execution of the act[, i]n this case, by the [October 1991] order of the District Attorney of Appeal of Athens, . . . the proceedings at court against the requested person [were adjourned], until his arrest or appearance." **[A 126.]**

8

indictment, which contained a detailed summary of the allegations against him. Both documents were authenticated by Ambassador Daniel Speckhard, the principal diplomatic officer of the United States in Greece.[8] **[A 108.]**

Also on June 9, 2008, the United States filed a complaint in the Southern District of New York, seeking Skaftouros's extradition at the request of the Greek government.[9] **[A 5.]** Skaftouros, represented by counsel, moved to dismiss the extradition complaint on May 29, 2009. **[A 134–41.]** He argued that there was insufficient evidence to establish probable cause that he had committed the charged offense, that the information in the Greek indictment was unreliable, and that the Greek arrest warrant was "fatally defective," thus depriving him of due process under the Fourteenth Amendment to the U.S. Constitution. **[A 135–36, 138–40, 136–38.]** The defects that Skaftouros pointed to were the absence of the Clerk's signature, the lack of a sufficiently precise description of his face, and the fact that the warrant had not been served upon him. **[A 136–38.]**

The Magistrate Judge filed a Memorandum Opinion and Order on July 31, 2009, granting the Government's application for a certificate of extraditability. *Skaftouros I*, 643 F. Supp. 2d at 545. **[A 148–63.]** He rejected Skaftouros's arguments relating to the purported defects in the arrest warrant, observing that "Skaftouros's challenge to the adequacy of the warrant . . . rests not on a failure to follow the Treaty, but on noncompliance with Greek law." *Id.* at 544. He further concluded that the information provided by the Greek authorities

---

[8] Under the U.S. extradition statute, "the certificate of the principal diplomatic or consular officer of the United States resident in [the demanding country] shall be proof that [a warrant is] authenticated in the manner required." 18 U.S.C. § 3190.

[9] Although Skaftouros was provisionally arrested pursuant to the June 9, 2008, complaint, formal extradition proceedings did not commence until September 20, 2008, shortly after Greece filed its formal request for extradition. **[A 5, 134.]**

provided probable cause to believe that Skaftouros was complicit in the kidnapping and murder of a minor. *Id.* at 546–52 **[A 148–63.]** Accordingly, he issued the certificate of extraditability. *Id.* at 552–53 **[A 163.]**

On August 13, 2009, Skaftouros filed a petition for a writ of habeas corpus in the Southern District of New York. **[A 164–65.]** In his petition, Skaftouros argued only that the Government had failed to establish probable cause to believe that Skaftouros had committed the charged offense; he did not renew the argument, earlier rejected by the Magistrate Judge, that the warrant was invalid because it was unsigned, imprecise, and unserved. **[A 164–65.]** The Government filed an opposition by letter on October 13, 2009, arguing that the Magistrate Judge had correctly found probable cause. **[A 166–67.]** Subsequently, on October 30, 2009, Skaftouros filed a "memorandum of law in response to government opposition," in which he raised anew his earlier argument before the Magistrate Judge, relating to the defects in the arrest warrant. **[A 171–73.]** The Government responded by letter dated November 10, 2009, arguing that Skaftouros's argument was not a proper basis on which to file a habeas petition. **[A 178–80.]**

On December 9, 2009, while the petition for habeas corpus was pending before the District Court, we issued our decision in *Sacirbey v. Guccione*, 589 F.3d 52 (2d Cir. 2009). In *Sacirbey*, we considered the appeal of Muhamed Sacirbey, a naturalized U.S. citizen born in Bosnia, who had served as Bosnia's foreign minister and as its ambassador to the United Nations. *Id.* at 55. Following his resignation from these posts, Sacirbey was targeted in an investigation into alleged financial improprieties during his tenure at Bosnia's mission to the U.N. *Id.* On December 5, 2001, the Cantonal Court of Sarajevo issued an International Arrest Warrant seeking Sacirbey's arrest on charges of embezzlement and abuse of office. *Id.*

10

Subsequent to the issuance of the warrant, however, legal reforms in Bosnia replaced the Cantonal Court with a new National Court, thereby depriving the Cantonal Court of jurisdiction over Sacirbey's case. *Id.* at 59–60. No new warrant of arrest was issued. *See id.* at 68–69 & n.22. Finding that the "factual and procedural history of this case is extraordinary," *id.* at 54, we held that the warrant requirement of the U.S.–Serbian extradition treaty[10] was not satisfied because "the Cantonal Court currently lacks jurisdiction over the investigation of Sacirbey's alleged crimes and no longer has any power to enforce the arrest warrant." *Id.* at 67 (internal quotation marks omitted).

Relying on the *Sacirbey* opinion, Skaftouros submitted a letter to the District Court on December 14, 2009, arguing that *Sacirbey* supported his argument that his petition should be granted because the Greek arrest warrant was "fatally defective." **[A 181–82.]** The Government responded by letter dated December 30, 2009, arguing that *Sacirbey* involved "a unique set of facts [that] is not present here"—namely, a warrant issued by a court that had since lost jurisdiction due to the judicial and political reorganization of the Bosnian government. **[A 183.]**

On April 27, 2010, Skaftouros sent a letter to the District Court raising yet another argument in support of his petition: that the Greek statute of limitations for murder had expired on or about March 22, 2010, which was the twentieth anniversary of the murder. **[A 185–86.]** Because Article V of the Treaty provides that "[a] fugitive criminal shall not be surrendered . . . when, from lapse of time . . ., the criminal is exempt from prosecution . . . ," Skaftouros argued that the extradition proceedings should be dismissed. **[A 185.]** The District Court subsequently directed the parties to brief whether "Greek law provides . . . for the tolling of statutes of

---

[10] The Federation of Bosnia and Herzegovina ("Bosnia") is a successor to the Kingdom of Serbia and thus a successor party to the treaty of extradition between the United States and the Kingdom of Serbia. *See Sacirbey*, 589 F.3d at 56 n.8.

11

limitations when an individual has fled from justice." **[A 193.]** There followed a volley of letters from Skaftouros and the Government regarding whether the statute of limitations had expired. Skaftouros submitted a letter on July 8, 2010, arguing that there was no tolling provision in the Greek statute of limitations, and attached a letter from his Greek counsel to that effect. **[A 193.]** The Government responded a week later, attaching a letter from the Public Prosecutor of the Court of Appeals of Athens, stating that the statute of limitations in the case against Skaftouros had been extended to twenty-five years by operation of the October 1991 Order suspending the prosecution, owing to his failure to appear to answer the charges against him after the indictment was served on his mother.[11] **[A 195–205.]** Skaftouros then replied with a July 21, 2010, letter from his Greek lawyer refuting the Government's tolling argument on the ground that Skaftouros had never been served with a copy of the indictment, and therefore the tolling provision referred to by the Government did not apply to him. **[A 207–10.]** The Government then "supplement[ed]" its response with copies of documents purporting to confirm service on Skaftouros: the April 17, 1991, request from the prosecution that police serve the indictment on Skaftouros **[A 212]**; the May 6, 1991, confirmation from the police to the prosecution that the indictment had been served on Skaftouros's mother **[A 213]**;[12] and the October 1991 Order suspending the proceedings, which made note of the "legal service" of the indictment on May 5, 1991. **[A 214]** The Government did not, however, include the original proof of service, which it has stated was stolen from the Athens Police Department. **[Blue at 19; A 285]**. Therefore, Skaftouros responded with another letter from his Greek counsel stating that "the only

[11] As noted above, *see* note 7, *ante*, Greece maintained from the outset that the statute of limitations had been extended by operation of the October 1991 Order.

[12] As noted above, *see* note 4, *ante*, Skaftouros does not contend that substitute service on his mother is *per se* ineffective, but rather that the Government has not adequately proven that the indictment was, in fact, served on his mother.

12

document that would demonstrate service of the order would be the *original* Certificate of Service, which of course is not presented by the Government." **[A 216.]**

On September 27, 2010, Skaftouros filed a motion to dismiss the extradition proceedings on the ground that the Greek statute of limitations had expired. **[SA 18–26.]**[13] The Government filed a response on October 18, 2010. **[SA 27–32.]** Both parties' briefs summarized the arguments that they had previously raised in their letters: According to Skaftouros and his Greek lawyer, the applicable Greek statute of limitations was twenty years and had therefore expired **[SA 24–25]**; according to the Government and the Greek prosecutors, the statute had been extended to twenty-five years.[14] **[SA 31–32.]**.

---

[13] As a procedural matter, a motion to dismiss is not an appropriate means of challenging an extradition order after a certificate of extraditability has been issued. It is well established that "[a]n extraditee's sole remedy from an adverse decision is to seek a writ of habeas corpus." *Ahmad v. Wigen*, 910 F.2d 1063, 1065 (2d Cir. 1990). It is not clear to us what authority a habeas court would have to entertain a motion to dismiss the underlying extradition proceeding once the certificate of extraditability has entered, inasmuch as the only matter before the habeas court is the petition for the writ. Put another way, once the certificate of extraditability has been entered, the extradition proceeding is over, and there is nothing to dismiss. Rather, in a separate civil action, the petitioner may seek collateral review of the extradition order, a review which, as discussed further below, is limited to testing "the legality of the extradition proceedings." *Murphy v. United States*, 199 F.3d 599, 601-02 (2d Cir. 1999). We recognize that Skaftouros's statute of limitations argument was not available at the time he filed the petition for a writ of habeas corpus in August 2009. In these circumstances, however, the proper procedure is to file a motion to amend the original petition under 28 U.S.C. § 2242 and Rule 15(c) of the Federal Rules of Civil Procedure or, alternatively, to move in the original extradition court to reopen the extradition proceedings and reconsider the extradition order in light of the newly available argument.

That said, the Government has raised no objection pertaining to the District Court's jurisdiction to rule on Skaftouros's "motion to dismiss," and both parties have briefed and argued the appeal as though the arguments raised in the motion to dismiss were properly made in the habeas petition. We will proceed, then, as if Skaftouros had raised his argument regarding the Greek statute of limitations in his petition for a writ of habeas corpus.

[14] The Government also argued that the Greek statute of limitations should be deemed satisfied because the Magistrate Judge had issued the certificate of extraditability before even the twenty-year period had expired. The District Court rejected this argument out of hand, and the Government appears to have abandoned it on appeal. We therefore do not address it.

13

On December 20, 2010, the District Court issued a Memorandum and Order granting both the petition for a writ of habeas corpus and the motion to dismiss. **[A 238–50.]** It first rejected Skaftouros's argument that there was no probable cause to support the extradition request. *Skaftouros II,* 759 F. Supp. 2d at 357–58 **[A 241–43.]** However, the court went on to find that Skaftouros had not been "charged" with an offense under the Treaty because the warrant was invalid under Greek law. Relying heavily on our opinion in *Sacirbey*, the District Court held that the Government was required to prove the validity of the warrant and that it had failed to do so. *Id.* at 358–59 **[A 243–45.]** Finally, the District Court held that the Government had failed to sustain its burden of proving that the statute of limitations had not expired. In this regard, it concluded that, even if the arrest warrant was valid, "the Government has not provided adequate proof that the Order extending the statute of limitations was served on Skaftouros or his close relative, which is necessary for the order to become binding." *Id.* [**A 247.**]

On January 3, 2011, the Government moved for reconsideration, arguing that it had not been given notice that the petition might be granted on a ground not asserted therein (that is, the validity argument) or that it bore the burden of proof on whether service of process was duly effected under Greek law. **[A 257–62.]** In its motion, the Government raised a new argument, supported by letters from the Greek prosecutors, that the absence of the Clerk's signature on the warrant did not render it invalid under Greek law. **[A 271–76, 278–81.]** The Government also questioned the propriety of the District Court's extended examination of Greek criminal procedure and argued that the court had misinterpreted *Sacirbey*.

14

The District Court denied the motion to reconsider on January 13, 2011. *Skaftouros II*, 759 F. Supp. 2d at 361. **[A 286–90.]** This appeal followed. On June 21, 2011, we granted the Government's motion to expedite the appeal and oral argument was held on August 25, 2011.

**DISCUSSION**

**A. Applicable Legal Standards**

1. *Standards Governing the Judicial Role in Extradition Proceedings*

The federal extradition statute empowers an extradition officer, who can be "any justice or judge of the United States, or any magistrate authorized . . . by a court of the United States, or any judge of a court of record of general jurisdiction of any State," to hear and consider evidence of a fugitive's criminality upon the filing of a formal complaint. 18 U.S.C. § 3184.[15] If the

_____

[15] Section 3184 provides as follows:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, or in cases arising under section 3181(b), any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181(b), issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered. Such complaint may be filed before and such warrant may be issued by a judge or magistrate of the United States District Court for the District of Columbia if the whereabouts within the United States of the person charged are not known or, if there is reason to believe the person will shortly enter the United States. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention;

15

extradition officer determines that the evidence is sufficient "to sustain the charge under the provisions of the proper treaty or convention," he is instructed to issue a certificate of extraditability to the Secretary of State, who has final and discretionary authority to extradite the fugitive. 18 U.S.C. § 3184; *see generally Lo Duca v. United States*, 93 F.3d 1100, 1103–04 (2d Cir. 1996).

At an extradition hearing, the "judicial officer's inquiry is confined to the following: whether a valid treaty exists; whether the crime charged is covered by the relevant treaty; and whether the evidence marshaled in support of the complaint for extradition is sufficient under the applicable standard of proof." *Cheung v. United States*, 213 F.3d 82, 88 (2d Cir. 2000). An extradition hearing is "not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him," *Benson v. McMahon*, 127 U.S. 457, 463 (1888), and is "not the occasion for an adjudication of guilt or innocence," *Melia v. United States*, 667 F.2d 300, 302 (2d Cir. 1981). Rather, "it is 'essentially a preliminary examination to determine whether a case is made out which will justify the holding of the accused and his surrender to the demanding nation.'" *Lo Duca*, 93 F.3d at 1104 (quoting *Ward v. Rutherford*, 921 F.2d 286, 287 (D.C. Cir. 1990)); *see also Jhirad v. Ferrandina*, 536 F.2d 478, 482 (2d Cir. 1976) ("Orders of extradition are *sui generis*. They embody no judgment on the guilt or innocence of the accused but serve only to insure that his culpability will be determined in

---

and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

18 U.S.C. § 3184. The complaint in such a proceeding is typically filed by the United States, through the appropriate U.S. Attorney's Office, acting for and on behalf of the demanding country, which is the "real party [in interest]." *Wacker v. Bisson*, 348 F.2d 602, 608 (5th Cir. 1965); *Cleugh v. Strakosch*, 109 F.2d 330, 332 (9th Cir. 1940).

16

another and, in this instance, a foreign forum."). In this way, the judicial officer's function is much the same as his "accustomed task of determining if there is probable cause to hold a defendant to answer for the commission of an offense." *Ward*, 921 F.2d at 287. As we have stressed in the past, "[w]hat is at issue in the proceeding . . . is not punishability but *prosecutability*." *In re McMullen*, 989 F.2d 603, 611 (2d Cir. 1993) (emphasis added) (internal quotation marks omitted).

By design, "the procedural framework of international extradition gives to the demanding country advantages most uncommon to ordinary civil and criminal litigation." *First Nat'l City Bank v. Aristeguieta*, 287 F.2d 219, 226 (2d Cir. 1960), *vacated on mootness grounds by* 375 U.S. 49 (1963).[16] As the Supreme Court has instructed,

> [i]n choosing between conflicting interpretations of a treaty obligation, a narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them. For that reason, if a treaty fairly admits of two constructions, one restricting the rights which may be claimed under it, and the other enlarging it, the more liberal construction is to be preferred.

---

[16] In addition, given the limited purpose of extradition hearings, fugitives do not benefit from many of the protections that are traditionally accorded to defendants in the criminal context. Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to extradition proceedings. *See* Fed. R. Crim. P. 54(b)(5); Fed. R. Evid. 1101(d)(3). Hearsay evidence is admissible, *United States ex rel Klein v. Mulligan*, 50 F.2d 687, 688 (2d Cir. 1931), and unsworn statements of absent witnesses may be considered, *Collins v. Loisel*, 259 U.S. 309, 317 (1922). Defendants have no right to confrontation or cross-examination of the witnesses against them. *Bingham v. Bradley*, 241 U.S. 511, 517 (1916). Indeed, the fugitive's "right to introduce evidence is . . . limited to testimony which explains rather than contradicts the demanding country's proof." *Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2d Cir. 1973) (internal quotation marks omitted).

*Factor v. Laubenheimer*, 290 U.S. 276, 293–94 (1933); *see also Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 10 (1936) ("It is a familiar rule that the obligations of treaties should be liberally construed so as to give effect to the apparent intention of the parties.").

The narrow scope of review in extradition proceedings and the mandate that treaty obligations be liberally construed are based on "[t]he interests of international comity." *Ahmad*, 910 F.2d at 1067. Accordingly, it has long been recognized that an extradition judge should avoid making determinations regarding foreign law. *See Jhirad*, 536 F.2d at 484–85 ("It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation. Such an assumption would directly conflict with the principle of comity upon which extradition is based."); *see also Grin v. Shine*, 187 U.S. 181, 190 (1902); *In re Assarsson*, 635 F.2d 1237, 1244 (7th Cir. 1980).

In addition to principles of international comity, the reluctance of our courts to fastidiously examine foreign law in extradition proceedings is founded in principles of judicial modesty. *See In re Assarsson*, 635 F.2d at 1244 ("The possibility of error warns us to be even more cautious of expanding judicial power over extradition matters."). Such modesty is well placed in the extradition context, which "is not the occasion for an adjudication of guilt or innocence," *Melia*, 667 F.2d at 302. Any arguments regarding the demanding country's compliance with its own laws, therefore, are properly reserved for the courts of that country. *See Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) ("[I]t has been presented as if this were the final stage and every technical detail were to be proved beyond a reasonable doubt. This is not the law.").

For all of these reasons, U.S. courts are strongly discouraged from reviewing whether the demanding country has complied with its own law and, indeed, it is error to do so except to the

18

limited extent necessary to ensure compliance with the applicable extradition treaty. *See United States ex rel. Petrushansky v. Marasco,* 325 F.2d 562, 565 (2d Cir. 1963) (Thurgood Marshall, *J.*) (role of a U.S. court is "limited to ensuring that the applicable provisions of the treaty and the governing American statutes are complied with."); *see also Sacirbey*, 589 F.3d at 65 (observing that courts should "give[] meaning to treaty language . . . while avoiding unwarranted incursions into the details of foreign criminal procedure."). Technical objections to the demanding nation's compliance with its own law are particularly disfavored. As the Supreme Court has cautioned, in the extradition context, "[f]orm is not to be insisted upon beyond the requirements of safety and justice." *Fernandez*, 268 U.S. at 312; *see also Grin*, 187 U.S. at 184–85 ("[W]here the proceeding is manifestly taken in good faith, a technical noncompliance with some formality of criminal procedure should not be allowed to stand in the way of a faithful discharge of our obligations.").

Nothing in our opinion in *Sacirbey* should be read to invite judges to freely examine whether the demanding country has complied with its own laws. Properly construed, *Sacirbey* is not inconsistent with the long-standing principle that we now reaffirm: Judicial officers considering extradition requests—and, by extension, district judges considering habeas petitions challenging extradition orders—should not engage in an analysis of the demanding country's laws and procedure, except to the limited extent necessary to ensure that the requirements of the federal extradition statute and the applicable extradition treaty have been satisfied.

2. *Standards Governing Habeas Review of Extradition Orders*

Because extradition orders are regarded as preliminary determinations, and not "final decisions" appealable as of right under 28 U.S.C. § 1291, they may only be reviewed by a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Jhirad*, 536 F.2d at 482. Courts have consistently held that habeas corpus is available to an extraditee "only to inquire whether the

19

magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Fernandez*, 268 U.S. at 312; *see also Melia*, 667 F.2d at 302. Importantly, we have held that "consideration of the procedures that will or may occur in the requesting country is not within the purview of a habeas corpus judge." *Ahmad*, 910 F.2d at 1066–67 (observing that "[t]he interests of international comity are ill-served by requiring a foreign nation . . . to satisfy a United States district judge concerning the fairness of its laws and the manner in which they are enforced.").

With these principles in mind, we review the District Court's factual findings for clear error and its legal determinations *de novo*. *Sacirbey*, 589 F.3d at 63.

**B.      The District Court Erred in Granting Skaftouros's Habeas Petition**

Applying the foregoing standards to the case before us, we hold that the District Court erred in granting Skaftouros's petition for a writ of habeas corpus.[17] The District Court's primary error was in imposing the burden of proof on the Government to show that the requirements of Greek law had been met. As a result of this underlying error, the District Court wrongly concluded that Greece had not produced a valid arrest warrant and that the statute of limitations had expired. We address each error in turn.

1.      *The District Court Erred in Imposing the Burden of Proof on the Government*

---

[17] Although we conclude that the District Court committed reversible error, we hasten to add that its errors are understandable in light of the then-fresh and as-yet untested language of our opinion in *Sacirbey*, as well as the procedural context faced by the District Court in the instant case. The arguments before the District Court came in fits and starts, through a volley of letter briefs and hastily submitted positions on complex issues of Greek law. In contrast, we have benefitted not only from a more considered and thorough round of briefing from the parties, but also from the conscientious opinions of the District Judge and Magistrate Judge who have handled the matter before us.

20

It is apparent from the opinion under review that the District Court placed the burden of proof on the Government in the habeas proceeding. With respect to the statute of limitations issue, this placement was explicit: "Although the Government need not prove beyond a reasonable doubt that the statute of limitations has not run in an extradition proceeding, . . . . [t]he internally inconsistent documents submitted without sufficient explanation do not serve to meet even the Government's lesser burden of proof on the statute of limitations issue." *Skaftouros II*, 759 F. Supp. 2d at 360–61. Although the District Court did not expressly place the burden of proof on the Government with respect to the issue of whether Greece had satisfied the Treaty's requirement of a "duly authenticated warrant," it interpreted our opinion in *Sacirbey* to "obligate[] the Government to *prove* the existence of a 'valid arrest warrant'" in order to defeat the habeas petition. *Skaftouros II*, 759 F. Supp. 2d at 358 (quoting *Sacirbey*, 589 F.3d at 67 (emphasis in *Skaftouros II*)). We hold that it was error for the District Court to effectively impose on the Government the burden of proving that Skaftouros was *not* "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

Habeas corpus, it is well known, "is not a neutral proceeding in which the petitioner and the State stand on an equal footing. Rather, it is an asymmetrical enterprise in which a prisoner seeks to overturn a presumptively valid judgment . . . ." *Pinkney v. Keane*, 920 F.2d 1090, 1094 (2d Cir. 1990) (construing 28 U.S.C. § 2254); *see also Fernandez*, 268 U.S. at 312 (habeas corpus "is not a means for rehearing what the magistrate already has decided. The alleged fugitive from justice has had his hearing. . . ."). Because we accord a presumption of validity to a judgment on collateral review, it is the petitioner who bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence. *Parke v. Raley*, 506 U.S. 20, 31 (1992)

21

("Our precedents make clear . . . [that] the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the [petitioner]."); *Walker v. Johnston*, 312 U.S. 275, 286 (1941) ("On a hearing [the § 2241 petitioner has] the burden of sustaining his allegations by a preponderance of evidence.").

Although we are not aware of any specific authority on the subject, we see no reason why the general habeas corpus standard of proof would not apply to habeas petitions arising from international extradition proceedings. As the Supreme Court held in a case construing the interstate extradition statute, 18 U.S.C. § 3181, "[p]rima facie[, the petitioner is] in lawful custody and upon him rest[s] the burden of overcoming this presumption by proof." *South Carolina v. Bailey*, 289 U.S. 412, 417 (1933). Similarly, collateral review of an international extradition order should begin with the presumption that both the order and the related custody of the fugitive are lawful.

We therefore hold that, in order to merit habeas relief in a proceeding seeking collateral review of an extradition order, the petitioner must prove by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), which, in this context, will typically mean in violation of the federal extradition statute, 18 U.S.C. § 3184, or the applicable extradition treaty.

This is not to say that a judge considering a petition for a writ of habeas corpus arising out of an extradition proceeding is expected to wield a rubber stamp. To the contrary, as we observed in *Sacirbey*, despite the narrow scope of habeas review in the extradition context, "[i]t is nevertheless 'our duty . . . to ensur[e] that the applicable provisions of the treaty and the governing American statutes are complied with.'" 589 F.3d at 63 (quoting *Petrushansky*, 325 F.2d at 565). However, *Sacirbey* did not impose any general burden of proof the Government in the

22

context of a habeas proceeding. Although we held that the applicable extradition treaty required the demanding country to "*provide, inter alia*, a valid warrant," 589 F.3d at 67 (emphasis added), that holding related to the initial extradition proceeding, where the Government, on behalf of the demanding country, does indeed bear the burden of proof. We did not hold that the burden remains with the Government at the habeas stage, after a presumptively valid certificate of extradition has already been issued.[18]

The District Court's placement of the burden of proof on the Government in this case was error. As explained in more detail below, this error caused the District Court to improperly examine Greece's compliance with its own law and to determine that certain requirements of the Treaty were not satisfied. These were legal determinations, which we review *de novo*. *See United States v. Moetamedi*, 46 F.3d 225, 228 (2d Cir. 1995) ("We note that legal issues relating to the validity of warrants . . . are reviewed *de novo*."); *Gerena v. Korb*, 617 F.3d 197, 201 (2d Cir. 2010) ("A district court's . . . application of a statute of limitations [is] reviewed *de novo* as [a] question[] of law."). Upon a review of the record, we conclude that the requirements of the U.S. extradition statute, 18 U.S.C. § 3184, and the Treaty have been satisfied.

2.      *The Treaty's Requirement of a "Duly Authenticated" Warrant is Satisfied*

Had the burden of proof been properly assigned by the District Court, in order to obtain the writ of habeas corpus, Skaftouros would have been required to prove, by a preponderance of the evidence, that the arrest warrant provided by the Greek government did not satisfy the Treaty's requirement of a "duly authenticated warrant" sufficient to show that he was "charged"

---

[18] As explained in further detail below, the petitioner in *Sacirbey* was able to sustain his burden of proving that he was being held in violation of the applicable treaty by showing that the warrant for his arrest was issued by a court that no longer had jurisdiction and thus had no power to enforce the warrant. 589 F.3d at 54, 69.

with a crime recognized by the Treaty. Upon a review of the record, we hold that Skaftouros did not, and cannot, carry this burden.

In common with other extradition treaties, the U.S.–Greece Treaty requires that, in cases where a fugitive is "merely charged with crime, a duly authenticated copy of the warrant of arrest in the country where the crime was committed, and of the depositions upon which such warrant may have been issued, shall be produced." Treaty art. XI. **[A 28.]** Greece fully complied with this requirement by submitting a warrant for Skaftouros's arrest that was authenticated by the U.S. Ambassador to Greece, along with an indictment demonstrating the existence of probable cause to believe Skaftouros had committed the crime charged. **[A 108.]** In most cases, the production of an arrest warrant authenticated by the principal diplomatic officer of the United States in the demanding country will suffice to satisfy a treaty's "duly authenticated warrant" requirement. *See* 18 U.S.C. § 3190 ("Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, *and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.*" (emphasis added)).[19] In this case, however, the

---

[19] This relaxed standard has been consistently followed in cases addressing the sufficiency of foreign arrest warrants in the international extradition context. *See, e.g.*, *Grin*, 187 U.S. at 190–92 ("The clause [of the Treaty requiring a duly authenticated arrest warrant] is satisfied by the production of an equivalent document."); *Caltagirone v. Grant*, 629 F.2d 739, 744 (2d Cir. 1980) ("The Treaty does not contemplate a review of the validity, under Italian law, of the Italian arrest warrants, but rather a simple factual determination whether a warrant has been issued."); *In re Neely*, 103 F. 626, 630 (C.C.S.D.N.Y. 1900), *aff'd* 180 U.S. 126 (1901) ("[I]f the certificates, signatures, etc., are in substantial conformity to the requirements of the [extradition] statute, and give reasonable assurance of authenticity, it is sufficient."). It has similarly been followed in cases addressing interstate extradition. *See Munsey v. Clough*, 196 U.S. 364, 373 (1905) ("The sufficiency of the indictment, as a

24

District Court went further, and imposed on the Government the burden of proving that the arrest warrant was technically valid as a matter of *Greek* law.  In so doing, the District Court explained that it relied on our opinion in *Sacirbey*, and in particular our reference therein to the invalidity of a foreign arrest warrant.  But *Sacirbey* was not intended as a break from the previous, well-established authority that the question of whether an arrest warrant is in technical compliance with the law of the demanding country is not to be decided by U.S. courts.  Rather, *Sacirbey* stands for the unexceptional proposition that a foreign arrest warrant cannot suffice to show that a fugitive is currently charged with an offense, as required by most extradition treaties, where the court that issued the warrant no longer has the power to enforce it.

Importantly, our analysis in *Sacirbey* was limited to determining whether the requirements of the extradition treaty were met; the majority opinion did not engage questions of Bosnian law. *See* 589 F.3d at 63.  Thus, when we stated that "the proof required under the Treaty to establish that an individual has been 'charged' with a crime is a valid arrest warrant," *id.* at 67, we were not referring to validity as a matter of technical compliance with Bosnian criminal procedure, but rather to validity under the applicable treaty.  To the extent the language in our opinion in *Sacirbey* has engendered confusion on this point, we now clarify that a "valid arrest warrant" is one that is "duly authenticated" as required by § 3190 and the applicable treaty, and sufficient to show that the fugitive is *currently charged* with an offense recognized by the treaty.  It must, in other words, show that the fugitive is in fact "prosecutab[le]" upon extradition to the demanding country.  *See McMullen*, 989 F.2d at 611.

Unlike the arrest warrant in *Sacirbey*, which failed to show that the fugitive was currently charged and prosecutable, the arrest warrant provided by Greece in this case satisfies these

matter of technical pleading, will not be inquired into on habeas corpus." (considering interstate extradition statute)).

25

requirements. The defects that Skaftouros identifies—namely, that the warrant does not contain the signature of the Clerk or a sufficiently detailed description of his face—are technical in nature, not jurisdictional as in *Sacirbey*. And, as we have stated before, arguments that "savor of technicality" are "peculiarly inappropriate in dealings with a foreign nation." *Shapiro*, 478 F.2d at 904 (quoting *Bingham*, 241 U.S. at 517 (internal modification removed)).

Skaftouros is, of course, free to raise these technical objections before the courts of Greece, which, we are confident, will be more competent to address them than an American court.[20] *See Melia*, 667 F.2d at 303 ("[Petitioner] will have the opportunity before the Canadian courts to challenge Canada's jurisdiction over him. We have the utmost confidence that the Canadian courts will decide the jurisdictional issue correctly."). Our concern is solely with the requirements of the Treaty and the federal extradition statute. We hold that the arrest warrant satisfies these requirements because it is duly authenticated and shows that Skaftouros is currently charged with an offense recognized by the Treaty, and is therefore prosecutable.

3. *The Treaty's Requirement that the Statute of Limitations on the Charged Offense Not Have Expired is Satisfied*

The District Court properly noted that the Treaty does not permit extradition where, "'from lapse of time or other lawful cause, according to the laws of either of the surrendering country [sic] or the demanding country, the criminal is exempt from prosecution or punishment for the offense for which the surrender is asked.'" *See Skaftouros II*, 759 F. Supp. 2d at 359 (quoting Treaty art. V). Because the Treaty itself requires an examination of whether the statute

---

[20] We note in this regard that the Government has argued that the arrest warrant is not invalid even as a matter of Greek law. **[*See* A 271–73; Blue 37–39.]** It first raised these arguments in its motion to reconsider before the District Court, which did not address them. We do not rely on these arguments in finding that the Treaty's warrant requirement has been satisfied. Rather, we defer to the Greek courts, which may consider whether Skaftouros or the Greek prosecutors have the better of the argument.

of limitations of either the demanding or asylum country has expired (and because the United States does not have a statute of limitations for first degree murder, *see* note 6, *ante*), it was proper for the District Court to examine Greek law for the limited purpose of determining whether its statute of limitations had expired. In so doing, however, the District Court again improperly placed the burden on the Government to prove that the statute of limitations had not run, rather than on Skaftouros to prove that it had.

The parties agreed that the Greek statute of limitations for aggravated murder is ordinarily twenty years. **[*See* SA 21, 6.]** The Government, however, argued that the normal statute of limitations had been extended under Article 113 of the Greek Criminal Code, which states that the statute of limitations may be tolled for up to five years when it is not possible to commence or continue a prosecution. *See* note 5, *ante*. **[A 195, SA 31.]** In support of this argument, the Government submitted a letter from the Public Prosecutor of the Court of Appeals of Athens stating that the statute of limitations had been so tolled in this case, owing to Skaftouros's failure to appear to answer the charges against him. **[A 196–99.]** In order to show that Skaftouros had been properly served with the indictment, a requirement of Article 113, the Government produced the April 17, 1991, request from the Public Prosecutor that police serve the indictment **[A 212]**; the May 6, 1991, confirmation from the police to the Public Prosecutor that the indictment had been served on Skaftouros's mother **[A 213]**; and the October 1991 Order suspending the proceedings, which noted the "legal service" of the indictment on May 5, 1991 **[A 214]**. In the habeas proceeding, it was Skaftouros's burden as the petitioner to show that the statute of limitations had not in fact been extended by operation of Article 113 and therefore had expired. This Skaftouros attempted to do by arguing that only the original certificate of service of the indictment would suffice to show that the statute of limitations had

27

been extended. **[A 207–10, 216.]** However, Skaftouros offered no authority for this position, save for the unsworn and unsupported assertion of his own lawyer in Greece. **[A 216.]**

We find that the averment of Skaftouros's Greek counsel was insufficient to satisfy Skaftouros's burden of proving that the statute of limitations had not been extended. The District Court's contrary holding was error, and derived from its improper placement of the burden of proof on the Government. *See Skaftouros II*, 759 F. Supp. 2d at 360 (finding that "the Government has not provided adequate proof that the Order extending the statute of limitations was served on Skaftouros or his close relative").[21]

In placing the burden of proof on the Government, the District Court relied on our opinion in *Jhirad v. Ferrandina*, 536 F.2d 478 (2d Cir. 1973). In *Jhirad*, however, our consideration of the question of burdens of proof was limited to whether the demanding country in an extradition proceeding should have to prove beyond a reasonable doubt that the American statute of limitations was tolled by virtue of 18 U.S.C. § 3290, which provides that "[n]o statute of limitations shall extend to any person fleeing from justice." *See Jhirad*, 536 F.2d at 484–85. Noting that the interests served by the beyond-a-reasonable-doubt standard apply "with less force in the context of an international extradition proceeding," we held that India, the demanding country and real party in interest, was only required to prove by a preponderance of the evidence that the statute had been tolled. *Id.* at 484. We did not address the assignment of

---

[21] The District Court appears to have misunderstood which document tolled the statute of limitations. In its opinion, it stated that "the Government has not provided adequate proof that the Order extending the statute of limitations [that is, the October 1991 Order] was served on Skaftouros or his close relative, which is necessary for the order to become binding." *Id.* However, as the Greek government made clear from the outset, it was service of the *indictment,* followed by Skaftouros's failure to appear to answer the charges, that triggered the suspension of the statute of limitations. **[See A 114, 198.]** While the October 1991 Order officially suspended the prosecution because Skaftouros "did not appear, neither was he arrested[,] within a month after the legal service of the [indictment] on [May 4, 1991]," **[SA 43]** there was no apparent requirement that the October 1991 Order, itself, be served upon Skaftouros or his close relative.

28

the burden of proof in a habeas proceeding challenging the legality of an extradition proceeding, but rather the assignment of the burden in the extradition proceeding, itself.[22]

The evidence before the District Court strongly suggested that the statute of limitations had been tolled by virtue of the October 1991 Order. Skaftouros's argument that the October 1991 Order was ineffective because there was insufficient proof that he had been served with the indictment is supported only by the word of his own Greek attorney—an averment lacking any indicia of reliability whatsoever. It is clear to us, therefore, that Skaftouros did not meet his burden of proving, even by a preponderance of the evidence, that the applicable Greek statute of limitations had expired or that Article V of the Treaty had not been satisfied.

**CONCLUSION**

For the reasons stated above, we hold that, in a habeas proceeding seeking collateral review of an extradition order, the petitioner bears the burden of proving, by a preponderance of the evidence, that he is being held in violation "of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), which, in this context, will typically mean in violation of the federal extradition statute, 18 U.S.C. § 3184, or the applicable extradition treaty. Furthermore, we reaffirm that judicial officers considering extradition requests—and district judges collaterally reviewing extradition orders pursuant to a petition for a writ of habeas corpus—must avoid engaging in an analysis of the demanding country's laws and procedure,

---

[22] We note as well that our reason for holding that India had the burden of proving, in the initial extradition proceeding, that the statute of limitations had been tolled was that we were considering the *American* statute of limitations, which could not be reviewed again by the Indian courts. *Id.* at 485 ("Unlike the elements of the offense, for which only probable cause need be established, . . . the question of whether Jhirad's prosecution is time barred will not again be reviewed in India."). In stark contrast, Skaftouros's argument relates to the *Greek* statute of limitations, and is therefore not only available for him to make before the Greek courts, but is most properly raised in that forum.

29

except to the limited extent necessary to ensure that the requirements of the federal extradition statute and applicable extradition treaty have been satisfied.

Accordingly, we conclude that:

(1) The District Court erred in assigning the Government, as respondent, the burden of proof in this habeas proceeding;

(2) The District Court erred in concluding that the Treaty's requirement of a duly authenticated warrant was not satisfied by the arrest warrant provided by the Greek authorities; and

(3) The District Court erred in concluding that the Greek statute of limitations had expired.

The judgment of the District Court is **REVERSED**, the writ of habeas corpus is **VACATED**, and the cause is **REMANDED** to the District Court solely for the purpose of entering a certificate of extraditability and order of commitment.