**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3350
_____

PHILIP ANTHONY BONADONNA,
Appellant

v.

DONNA ZICKEFOOSE;
EDWARD REILLY, Commissioner U.S. Parole Commission
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1:11-cv-06193)
District Judge: Honorable Jerome B. Simandle
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 10, 2013
Before: JORDAN, GREENAWAY, JR. and SCIRICA, Circuit Judges

(Opinion filed: November 1, 2013)
_____

OPINION
_____

PER CURIAM

Philip Anthony Bonadonna, a federal prisoner currently incarcerated at FCI

Coleman (Low), appeals an order denying his 28 U.S.C. § 2241 habeas corpus petition.

We will affirm.

Bonadonna is serving a lengthy sentence of incarceration arising, in part, out of his

participation in what was at the time called "the largest cocaine ring in U.S. history."[1]

The component portions of his sentence were assembled from two separate convictions, and the specific terms of incarceration imposed are central to this case.

The first conviction, from the Eastern District of Arkansas (4:83-cr-00113, hereinafter the "Arkansas" conviction or sentence), involved several drug-importation and conspiracy offenses. The District Court sentenced Bonadonna to fifteen years of imprisonment on one count and a consecutive five years of imprisonment on another, for a net term of twenty years' incarceration. See United States v. Bonadonna, 775 F.2d 949, 950 (8th Cir. 1985).

The second conviction, from the Northern District of Georgia (1:84-cr-00014, hereinafter the "Georgia" conviction or sentence), involved a number of charges, leaving in its wake a confusing sentence structure. Bonadonna was convicted on counts one, two, four, thirteen, fourteen, nineteen, thirty-eight, thirty-nine, and forty-two of the relevant indictment. On counts one, two, and four, he received sentences of twenty, twenty, and forty years respectively, all to run concurrently. On the remaining counts, he received varying terms that all ran concurrently to each other, amounting to an aggregate block of fifteen years; however, this fifteen-year aggregate was "to follow the sentences in count one and two," creating a thirty-five-year aggregate that would run alongside the forty-

---

[1] See 9 Convicted in Cocaine Operation, Associated Press, Oct. 28, 1984, available at 1984 WLNR 141547; see also United States v. Rosenthal, 793 F.2d 1214 (11th Cir. 1986) (describing the history of the "Southern Comfort" operation on direct appeal).

year sentence from count four.

However, count four of the indictment alleged Bonadonna's participation in a continuing criminal enterprise, in violation of 21 U.S.C. § 848; and, at the time, § 848(c) (1982) specified that any "sentence imposed under this section . . . shall not be suspended." In other words, the forty-year portion of his Georgia sentence was not parole-eligible. See United States v. Gomberg, 715 F.2d 843, 848 & n.2 (3d Cir. 1983), overruled on other grounds by Garrett v. United States, 471 U.S. 773, 794–95 (1985); United States v. Zylstra, 713 F.2d 1332, 1341 n.2 (7th Cir. 1983); see also Hernandez v. Garrison, 916 F.2d 291, 294 (5th Cir. 1990) (noting that Sentencing Reform Act of 1984 "applies only to those offenses occurring on or after its effective date, November 1, 1987").

In sum, Bonadonna was to serve *concurrent* thirty-five-year parole-eligible and forty-year parole-ineligible sentences on the Georgia conviction. As further ordered by the Georgia judgment, all of its sentences were to run consecutive to Bonadonna's Arkansas sentences. Thus, Bonadonna was to serve twenty years of imprisonment arising out of the Arkansas conviction, followed by a forty-year parole-ineligible term arising out of the Georgia conviction, for a net term of sixty years of imprisonment.

In Bonadonna's habeas petition, which he filed pursuant to 28 U.S.C. § 2241, he alleged that he had been "applying for a parole hearing" for eight years, but he had been denied each time. He noted that at his most recent parole hearing, he was informed that a reconsideration inquiry would be held in January 2010, but that the date had come and

3

gone with no hearing. Bonadonna complained that, per this status quo, he would "serve 50 years on a 60-year aggregate sentence," a severe outcome. He suggested that this conduct violated his Due Process rights. Bonadonna also appeared to claim that his sentence had been aggregated incorrectly—he repeatedly objected to the "piecemealing" of his sentence—and that his good-conduct time credits had been erroneously computed; he suggested that his release date should have been computed as January 2011.

The Government's response suggested an excellent reason why Bonadonna's parole hearing had not taken place: he had no more parole-eligible sentences to serve. According to the lengthy record submitted by the Government, following a period of confusion about the correct calculation of Bonadonna's sentence, as well as several (ultimately denied) requests for early parole, Parole Commission officials began to work to reduce the time that Bonadonna would have to serve, albeit within the framework of his non-parolable term. In 2004, the Parole Commission decided to parole Bonadonna's Arkansas sentence "effective February 1, 1992 *nunc pro tunc* to the consecutive non-parolable [Georgia] sentence." July 21, 2004 Notice of Action, ECF No. 8-1.[2] Later, in 2008, the Parole Commission decided to grant parole on "the 35 year portion of [his Georgia] sentence, which is completely absorbed by the 40 year non-parolable portion,"

___

[2] Under former 18 U.S.C. § 4205(a) (1982), a federal prisoner became eligible for parole after serving "one-third of such term [of his sentence] . . . except to the extent otherwise provided by law." The record suggests that the aforementioned February date was the "earliest possible date" that parole could have been granted on the Arkansas sentence. See July 12, 2004 Hearing Summary, ECF No. 8-1.

although it observed that this action did "not change [his] current mandatory release date." Combined, these decisions forced the commencement of the non-parole-eligible sentence in February 1992, and established a March 2015 release date.

The District Court agreed with the Government's assessment. Finding no further parolable sentences left for which a hearing or relief would be warranted, the Court denied the habeas petition. See generally Bonadonna v. Zickefoose, No. 11-6193, 2012 WL 2995210 (D.N.J. July 23, 2012). This timely appeal followed.[3]

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. Vega v. United States, 493 F.3d 310, 313–14 (3d Cir. 2007). In reviewing the denial of a § 2241 petition, we "exercise plenary review over the District Court's legal conclusions and apply a clearly erroneous standard to its findings of fact." See O'Donald v. Johns, 402 F.3d 172, 173 n.1 (3d Cir. 2005) (per curiam).

In his pro se opening brief, Bonadonna attacks the Parole Commission's failure to grant him a parole hearing and the Bureau of Prisons' calculation of his sentence (he also seeks immediate release). He points to a 1995 hearing at which an officer informed him that his parole reconsideration hearing would be held in 2010, as well as a contemporary

---

[3] We requested that the parties brief a matter discussed (but not at length) before the District Court: the actual computation of Bonadonna's current sentence, incorporating his present good-conduct time credits. The Government moves to supplement the record pursuant to Fed. R. App. P. 10(e)(2) to include materials related to that computation. As we believe that this matter was presented to the District Court (see, e.g., Pet'r's Reply 3, ECF No. 9), and that resolving it would be a wise use of judicial resources, we grant the Government's motion to supplement the record. See Burton v. Teleflex Inc., 707 F.3d 417, 435–36 (3d Cir. 2013) (citation omitted).

recommendation that "27 years" would "satisfy the accountability for the subject's behavior." See Feb. 28, 1995 Initial Hearing Summary, ECF No. 8-1.[4]  He refers, in his submissions, to March 15, 2015, as his current parole date. See, e.g., Appellant's Br. 9. Finally, Bonadonna takes issue with the alleged "disaggregation" of his sentence.

Bonadonna's arguments reveal a misunderstanding of how his sentences were imposed and calculated, as well as the respective powers and obligations of the Bureau of Prisons and the sentencing courts. As discussed above, two net sentences were imposed: the first, twenty years of parole-eligible time, from Arkansas; the second, forty years of parole-ineligible time from Georgia (with some sub-components parole eligible), to run consecutive to the Arkansas time. The Bureau of Prisons does combine multiple sentences into a single aggregate term. See, e.g., Blood v. Bledsoe, 648 F.3d 203, 207 (3d Cir. 2011) (per curiam). But it is also obligated to administer sentences in accordance with a sentencing court's order. See Reynolds v. Thomas, 603 F.3d 1144, 1149 (9th Cir. 2010).  Regardless of the Bureau's original computation of Bonadonna's total term of imprisonment, the fact remains that he was serving two consecutive sentences, one parole-eligible and one essentially not so. The record unambiguously reveals that parole has been granted on all parolable component parts of Bonadonna's

---

[4] The Parole Commission acknowledged this error in 2004. See May 11, 2004 Notice of Action on Appeal, ECF No. 8-1; see also July 6, 2004 Hearing Summary, ECF No. 8-1 ("However, it was later discovered that the sentence structure was no[t] correct. The Bureau of Prisons corrected the sentence structure and that changed the entire setup of dates.").

sentence of incarceration; ergo, he has no parolable time remaining, and he is not entitled to any further parole hearings. March 2015 is not his "parole" date, but his projected *release* date.

Bonadonna's attacks on the Bureau's calculation of his sentence are without merit. To the extent that he relies on estimations of parole eligibility, his arguments fail for the reasons discussed above; simply put, he has already received any parole to which he would be entitled. The Government's calculation of Bonadonna's sentence[5] explains how the forty-year term that began in 1992 is diminished via statutory good-conduct time and "Extra Good Time," yielding a release date in 2015; moreover, the Government sets out why the good-conduct time accrued on the Arkansas sentence does not affect this date. Bonadonna does not meaningfully challenge these figures. Cf. Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011) (discussing the "asymmetrical" nature of habeas-corpus proceedings and the burdens placed upon the petitioner).

For the above reasons, we will affirm the District Court's judgment.

---

[5] We thank the Government for collecting and presenting the relevant information. And, as noted previously, we grant the Government's motion to supplement the record.