18-3437-pr
*Marcus Brian Jainarine Bisram v. United States of America*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of July, two thousand nineteen.

Present:
> DENNIS JACOBS,
> DEBRA ANN LIVINGSTON,
> JOSEPH F. BIANCO,
> > *Circuit Judges*.

---

MARCUS BRIAN JAINARINE BISRAM,

> *Petitioner-Appellant*,

v.                                                             18-3437-pr

UNITED STATES OF AMERICA,

> *Respondent-Appellee*.[1]

---

| | |
|---|---|
| For Petitioner-Appellant: | CHARLES A. ROSS (Timothy Joseph Quill, Jr., *on the brief*), Mintz & Gold LLP, New York, NY |
| For Respondent-Appellee: | NICHOLAS J. MOSCOW (Samuel P. Nitze, Rebecca A. Haciski, *on the brief*), *for* Richard P. Donoghue, United States Attorney for the Eastern District of New York, Brooklyn, NY |

---

[1] The Clerk of Court is respectfully instructed to amend the caption as set forth above.

Appeal from an October 31, 2018 judgment of the United States District Court for the Eastern District of New York (Matsumoto, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Petitioner-Appellant Marcus Brian Jainarine Bisram, a dual citizen of the United States of America and the Co-operative Republic of Guyana ("Guyana"), currently faces a charge of murder in Guyana in connection with a beating at Bisram's Guyanese residence on the night of October 31, 2016, and the subsequent death of the victim. The evidence against Bisram includes a written statement allegedly given to Guyanese police on November 15, 2016 by Chaman Chunilall, a relative of Bisram's and a guest at Bisram's house on the night of the alleged murder. The statement describes a party that took place at Bisram's house that evening, during which Chunilall allegedly witnessed Bisram approach an inebriated party guest, Faiyaz Narinedatt, and grope Narinedatt's private parts. The statement claims that Narinedatt responded by slapping Bisram several times and that Bisram responded in turn by instructing his bodyguard and several other party guests (in words or substance) to kill Narinedatt. The statement then claims that the men began to beat Narinedatt with wooden staves before finally placing Narinedatt's bloodied and motionless body in the trunk of one of the men's cars, which was then driven away. Narinedatt was found dead the next morning. In addition to the written statement by Chunilall, Corporal Germaine Laundry of the Criminal Investigations Department of the Guyana Police Force has sworn in an affidavit that Chunilall did indeed make the written statement containing these details.

On February 14, 2017, following an investigation into Narinedatt's death, Guyana submitted a formal request to the United States Department of State for Bisram's extradition to face a charge of murder. On October 12, 2017, a magistrate judge in the United States District

Court for the Eastern District of New York (Kuo, *M.J.*) issued a Certificate of Extraditability, certifying to the Secretary of State that there was probable cause to believe that Bisram committed the charged murder and authorizing the Secretary's extradition of Bisram to Guyana. On November 17, 2017, Bisram filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York, challenging the Certificate of Extraditability. On October 31, 2018, following several extensions, the district court (Matsumoto, *J.*) denied Bisram's petition, concurring in the magistrate judge's determination that there was a "reasonable ground" to believe that Bisram committed the murder as charged. Sp. App. 14 (citation omitted). Bisram now appeals the district court's denial of his habeas petition on the grounds that (1) the evidence presented to the extradition court failed to establish a reasonable ground to believe that Bisram committed the charged murder, especially in light of Chunilall's subsequent alleged recantation of his original statement to police; and that (2) Bisram received constitutionally ineffective assistance of counsel during the extradition and habeas proceedings. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**Discussion**

"At an extradition hearing, the 'judicial officer's inquiry is confined to the following: whether a valid treaty exists; whether the crime charged is covered by the relevant treaty; and whether the evidence marshaled in support of the complaint for extradition is sufficient under the applicable standard of proof.'" *Skaftouros v. United States*, 667 F.3d 144, 154–55 (2d Cir. 2011) (quoting *Cheung v. United States*, 213 F.3d 82, 88 (2d Cir. 2000)). "In the exercise of the extraditing judge's discretion, a fugitive may be permitted to offer explanatory testimony, but may not offer proof which contradicts that of the demanding country." *Messina v. United States*, 728

3

F.2d 77, 80 (2d Cir. 1984).   Thus, "statements [that] would in no way explain . . . or . . . obliterate the government's evidence, but would only pose a conflict of credibility . . . should properly await trial in [the country seeking extradition]." *Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2d Cir. 1973) (Friendly, *J*.) (internal quotation marks omitted).

Extradition orders "may only be reviewed by a petition for a writ of habeas corpus under 28 U.S.C. § 2241." *Skaftouros*, 667 F.3d at 157.   On collateral review of an extradition order, the district court may only "inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was a reasonable ground to believe the accused guilty." *Id.* (internal quotation marks omitted) (quoting *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)). Ultimately, "in order to merit habeas relief in a proceeding seeking collateral review of an extradition order, the petitioner must prove by a preponderance of the evidence that he is in custody in violation" of the statute authorizing extradition or the applicable extradition treaty.   *Skaftouros*, 667 F.3d at 158 (internal quotation marks omitted).

### A.  Sufficiency of the Evidence

Bisram first argues that the evidence presented to the magistrate judge does not establish a reasonable ground to believe that Bisram committed the charged crime because the principal witness for the prosecution, Chunilall, has since recanted his original statement implicating Bisram.   The district court rejected this argument and upheld the extradition court's finding for three main reasons.   We agree with each of them.

First, as the district court recognized, Bisram failed to introduce evidence of Chunilall's alleged recantation at his extradition proceeding, although he had such evidence in his possession at that time and has provided no reason why he could not have done so.   *See* Sp. App. 13 ("Despite

4

apparently having evidentiary proof of recantations at the time, including that of Chunilall, petitioner failed to offer the evidence to Magistrate Judge Kuo during the extradition proceedings."). Before the magistrate judge, Bisram's attorney conceded that he had evidence of Chunilall's alleged recantation in his possession. *See* JA388 ("Chumallilo [sic] . . . is the one who has completely recanted his story . . . And we have transcripts that say that."). Yet Bisram never provided that evidence to the magistrate judge, who was presented only with Chunilall's November 2016 statement implicating Bisram. Given the contents of the record at the extradition proceeding, it is no surprise that the extraditing court found "probable cause to believe that [Bisram] . . . committed the offense for which extradition is sought." J.A. 437. And Bisram cites no authority for the proposition that a habeas court reviewing an extraditing court's decision (much less a *court of appeals* reviewing the *habeas court*'s decision) has a basis to entertain additional evidence not presented to the extraditing court despite its availability to the petitioner at the time of the extradition proceeding.

Second, the district court concluded that even considering the proffered evidence of Chunilall's alleged recantation, it is not clear that Chunilall in fact recanted his original statement. *See* Sp. App. 14 ("Based on the evidence submitted, it is not clear that Chunilall recanted his statement. Instead, he appears to be responding to leading questions in a manner that suggests confusion on his part."). The evidence of Chunilall's alleged recantation to which Bisram points consists largely of one-word statements that Chunilall made in response to hostile cross-examination before a Guyanese Magistrate Court on July 27, 2017 and April 4, 2018. Compared to Chunilall's comprehensively detailed statement in November 2016, these cross-examination responses contain almost no detail at all. For instance, in the April 2018 proceeding, Chunilall gave one-word answers to 106 out of 108 consecutive questions. Moreover, at both proceedings,

5

Chunilall's responses cast doubt on his level of comprehension of the nature of the proceedings and the questions being asked. For instance, at the July 17 proceeding, when asked whether he understood the questions being put to him, Chunilall responded, "No," J.A. 638, and at the April 2018 proceeding, when asked to explain his conflicting responses to the attorneys for either party, he responded, "I don't have a reason," J.A. 665. Such responses undermine the probative value of Chunilall's alleged recantation at these proceedings, particularly in light of additional statements at the April 2018 proceeding *reaffirming* Chunilall's original statement implicating Bisram.

Third, the district court concluded that even if it accepted Bisram's argument that Chunilall's original statement alone was insufficient proof of criminal conduct by Bisram, other evidence before the magistrate judge, considered in conjunction with Chunilall's statement, sufficed to meet the relevant standard. *See* Sp. App. 14 ("Chunilall's recantation would not completely obliterate probable cause because it was not the sole evidence against petitioner." (internal quotation marks, alterations, and citation omitted)). For one thing, Corporal Laundry's sworn affidavit provides additional evidence that Chunilall did, in fact, make the statement to Guyanese police in which he described Bisram's direct involvement in Narinedatt's murder. Chunilall subsequently stated that he *never made* the November 2016 statement, a claim that contradicts Corporal Laundry's affidavit and poses a clear-cut credibility dispute well suited for resolution in the extraditing country, but that does not undermine the extraditing country's threshold showing of probable cause. *See Shapiro*, 478 F.2d at 905 ("[S]tatements [that] would in no way explain . . . or . . . obliterate the government's evidence, but would only pose a conflict of credibility . . . should properly await trial in [the country seeking extradition]."). For another thing, even erasing every reference to Chunilall's account from the record, a strong circumstantial case points toward Bisram's involvement in the murder. Multiple witnesses testified that Bisram

was arguing with Narinedatt, that Bisram asked his bodyguard to do something about Narinedatt, and that the bodyguard and several other guests brutally beat Narinedatt until he was motionless and bleeding. Even such circumstantial evidence alone could constitute "evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Skaftouros*, 667 F.3d at 157.

We agree with all three reasons the district court gave for declining to issue a writ of habeas corpus to Bisram on the basis of Chunilall's alleged recantation. At a minimum, we cannot say that the district court erred in concluding that the evidence submitted by Guyana surpassed the minimal threshold of "any evidence warranting the finding that there was a reasonable ground to believe the accused guilty." *Id.*

## B. Ineffective Assistance of Counsel

Bisram additionally argues that he received constitutionally ineffective assistance of counsel, both before the magistrate judge and before the habeas court. This argument fails because Bisram lacked a constitutional right to the effective assistance of counsel in either context.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. vi. But this constitutional guarantee does not apply in the context of an extradition proceeding. *See Caltagirone v. Grant*, 629 F.2d 739, 748 n.19 (2d Cir. 1980) ("The Sixth Amendment by its terms applies only to 'criminal prosecutions,' and an extradition proceeding is not a 'criminal prosecution.'"). As for habeas corpus proceedings, the same reasoning applies. The Sixth Amendment provides no right to counsel in the context of habeas corpus review of a criminal conviction, *see Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), and Bisram cites no authority for the proposition that the rule should be different in the context of a habeas corpus proceeding

reviewing a magistrate judge's issuance of a Certificate of Extraditability. Because Bisram "ha[s] no constitutional right to counsel" in these contexts, he "[can]not be deprived of the effective assistance of counsel" in either one. *Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982); *see also Evitts v. Lucey*, 469 U.S. 387, 396 n.7 (1985) ("Of course, the right to effective assistance of counsel is dependent on the right to counsel itself."). Because the right to counsel provided by the Sixth Amendment did not apply under the circumstances presented by this case, Bisram's claim of a constitutional violation must fail.

\* \* \*

We have considered all of Bisram's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk